## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.R., a minor, by and through his parents and natural guardians, Mr. R.R. and Ms. N.R., husband and wife, and Mr. R.R. and Ms. N.R., husband and wife, in their own right, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 2:21-cv-1088 |
| | : | |
| v. | : | |
| | : | |
| GREATER LATROBE SCHOOL DISTRICT et al., | : | |
| | : | |
| Defendants | : | |
| | : | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT,
GREATER LATROBE SCHOOL DISTRICT, PURSUANT TO
RULES 12(B)(1) AND 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendant, Greater Latrobe School District (hereinafter the "District"), by and through its attorneys, Andrews & Price, LLC, files the following Brief in Support of Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**BACKGROUND**

Plaintiffs initiated this matter by the filing of a Complaint on August 16, 2021. As required by Rules 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant assumes Plaintiffs' allegations to be true, and views all facts in the light most favorable to them. Viewed according to these standards, the facts affecting Plaintiffs' claims against the Defendant are construed as follows for purposes of resolving the Motion to Dismiss.[1]

---

[1] In accordance with the standard of review, the "facts" relevant to this Motion to Dismiss are taken from the Plaintiffs' Complaint. By no means does the District concur with this rendition of the facts other than for the purpose of resolving this motion.

1

Plaintiff J.R. is a minor child citizen of the Commonwealth of Pennsylvania, residing in the City of Latrobe, Pennsylvania, and at all times relevant hereto was a student in the Greater Latrobe School District. (Complaint, hereinafter "C," ¶ 2). Plaintiffs Mr. R.R. and Ms. N.R. are the parents and natural guardians of minor child J.R., and at all times relevant hereto, Plaintiff J.R. resided with his parents, R.R. and N.R., in the Greater Latrobe School District. (C ¶ 3). Defendants Cary James Lydic and David F. Galando are adult individuals residing in the Commonwealth of Pennsylvania and at all times relevant herein were employed by Defendant District. (C ¶¶ 5, 6). Defendants R.S. and W.S. are minor children citizens of the Commonwealth of Pennsylvania, residing in the City of Latrobe, Pennsylvania, and at all times relevant hereto were students in the Greater Latrobe School District. (C ¶¶ 7, 8).

During his freshman year, J.R. was accepted into the Greater Latrobe Junior Varsity Wrestling program, where he was coached primarily by Defendants Lydic and Galando. (C ¶ 16). Shortly after J.R. began the 2019-2020 wrestling season, he began witnessing various acts of alleged hazing by several other members of the wrestling team. The alleged hazing frequently consisted of one of the older wrestlers, Defendant R.S., hitting or smacking a younger teammate with a wooden stick that was kept near the practice gym. (C ¶ 17). Plaintiffs allege tha J.R. was personally attacked for the first time in December of 2019, when Defendant R.S., J.R.'s ninth-grade teammate, struck J.R. with the wooden stick on the back of the leg. A scuffle between the two ensued, but the boys remained friends, or so J.R. thought. (C ¶ 18).

On January 8, 2020, after returning from winter break, J.R. had finished class and was preparing to participate in wrestling practice. Since his ninth-grade classes ended at 2:45pm, Plaintiff J.R. arrived at the gymnasium at approximately 2:50pm. (C ¶ 19). Plaintiff J.R. put on his gym shorts, t-shirt and socks, and walked to the auxiliary gym at the high school to wait for

2

practice. As he sat on the floor in the auxiliary gym getting ready to put on his shoes, Plaintiff J.R. was allegedly tackled by his ninth-grade, minor-child teammate, S.B., and then pinned to the ground – facedown - by S.B., Defendant W.S., and Defendant R.S. (C ¶ 20). While Plaintiff J.R. was held down and immobilized, S.B. allegedly retrieved some rope and/or a net from an unknown location and bound the feet and hands of Plaintiff J.R. Defendant W.S. remained sitting on the now-tied-up Plaintiff J.R. and was joined in physically restraining Plaintiff J.R. by S.B. (C ¶ 21). By this time, Defendant R.S. had retrieved "the stick" referenced above. R.S. allegedly began forcefully striking J.R. with the stick, beating him several times on the back of the legs. Defendant R.S. then took the stick and rammed it into the buttocks of Plaintiff J.R. approximately five times. In doing so, R.S. allegedly forcefully and purposefully used the stick to penetrate the anus of J.R. by forcing J.R.'s shorts into his anus with the stick. (C ¶ 22).

The three assailants – S.B., Defendant W.S., and Defendant R.S. – were allegedly laughing and joking during the entirety of this sexual assault on the minor plaintiff, J.R. Defendant R.S. admitted in his juvenile delinquency proceeding that he took advantage of his physical ability and knew he "had control over" his victims, and in particular, Plaintiff J.R. (C ¶ 23). The incident only ended when J.R. was finally able to wretch free from the rope and push his assailants off of him. The assailants then allegedly proceeded to attempt to tie up J.R. for a second time. J.R. managed to fight them off and gain control of the weapon used in the assault. (C ¶ 24). At that point, Defendant Galando appeared, saw the rope and/or netting and questioned the students regarding the incident. The assailants denied any wrongdoing. (C ¶ 25).

The Complaint alleges that, on the date of the assault, and on every practice-day preceding the incident, from 2:45 pm until 3:30pm, the ninth-grade wrestlers, consisting of approximately fifteen (15) minor participants, were completely unsupervised. (C ¶ 26). It is further alleged that

the Defendants Lydic and Galando left the minors unsupervised due to the fact that the seventh and eighth-grade students did not finish classes until 3:15pm and therefore wrestling practice did not commence until 3:30pm. The ninth-grade group of wrestlers allegedly had no adult supervision whatsoever from the time they left their classrooms at 2:45pm until the coaches arrived to begin practice at 3:30pm. This group of fourteen and fifteen-year-old boys were left to their own devices for 45 minutes every day. (C ¶ 27).

Plaintiffs allege that the District and Defendants Lydic and Galando either knowingly allowed these minor students to be unsupervised or were negligently unaware that students were being left unattended.  Plaintiffs further allege that Defendants were manifestly negligent in their supervision of the minor students entrusted to their care by their unknowing parents, and of Plaintiff J.R. in particular. (C ¶ 28). The Complaint further alleges that the District was also negligent in failing to have anti-hazing policy and procedures in place, or if it did, failed to enforce them and/or to properly train and instruct Defendants Lydic and Galando on identifying and eliminating sports-related hazing. (C ¶ 29).

Plaintiffs allege that Defendants Lydic and Galando were not only aware of the hazing that was occurring on their team, they also knew of the existence and location of the weapon used to perpetrate it (i.e., the wooden stick). (C ¶ 30). Defendant Lydic, after witnessing one of the hazing incidents, allegedly told the offending student to be careful of the cameras located near the practice gym. (C ¶ 31).

Plaintiffs further allege that Defendants Lydic and Galando were not only negligent in the supervision of their athletes but were grossly negligent in their failure to report these assaults, and thereby emboldened the athletes to continue by failing to penalize them for same. They allegedly created a climate of fear and intimidation, and a team culture of betrayal (C ¶ 32).  Noteworthy

4

from the allegations of Paragraph 32 of the Complaint is *Plaintiffs' admission that the alleged hazing incidents were never reported to the District's administration or School Board.*

Defendants allegedly abdicated their supervisory and caretaker responsibilities. Children were left completely unattended, despite the fact that the coaches knew that hazing was occurring and that students were physically assaulting other students. (C ¶ 33).

According to the Complaint, the assault committed by the three assailants has left Plaintiff J.R. traumatized, and its long-term effects are unknown. Plaintiff J.R. has suffered, and continues to suffer, psychological trauma, embarrassment and humiliation. He was deprived of an after-school athletic program that should have improved his self-confidence and physical and mental well-being, but did just the opposite. (C ¶ 34). Plaintiff J.R. must now pursue proper psychiatric treatment. (C ¶ 35). J.R. has suffered and continues to suffer pain, suffering and humiliation, which no minor child should have to endure. (C ¶ 36).

Plaintiffs' Complaint consists of five counts asserted against the District.  Under Count I based on a state-created danger theory, Plaintiffs assert the District knew or should have known (1) that peer-on-peer hazing was occurring in its facilities and during District-sponsored sports and activities, (2) that Defendants Lydic and Galando were engaging in inappropriate hazing towards its students, and that they were failing to protect students from hazing by other peers, and (3) should have known of Plaintiff J.R.'s vulnerability when he and other students were left unsupervised. (C ¶¶ 42-44). Plaintiffs claim that Defendant District, based on this knowledge, should have ensured all middle school students were properly supervised by staff who would keep them safe. (C ¶ 45). Defendant District, knowing that its own staff were engaging in and/or ignoring inappropriate behavior, should have anticipated that Plaintiff J.R. would have been traumatized by said behavior. (C ¶ 46).

Plaintiffs allege that Defendant District used its authority to create the opportunity for harm that otherwise would not have existed by *failing* to supervise its students, by *failing* to hire, instruct and train wrestling coaches who would act appropriately and in the best interest of its students, and by subsequently *failing* to ensure Plaintiff J.R.'s safety. (C ¶ 51) (emphasis added). Defendant District's actions were predicated on a *failure to act* in light of a known risk. (C ¶ 52) (emphasis added).

Under Count II, Plaintiffs assert a claim of negligence per se based on the District's alleged violation of the Piazza Antihazing Law.[2] (C ¶ 58).   Under Count III, Plaintiffs assert a claim of negligence. (C ¶¶ 68-73).   Under Count IV, Plaintiffs assert a claim of assault and battery. (C ¶¶ 74-77).   Under Count V, Plaintiffs assert a claim of intentional infliction of emotional distress.[3] (C ¶¶ 78-85).   Plaintiffs assert claims for attorneys' fees and costs pursuant to Counts II and V. (C, Wherefore clauses pp. 13, 16).

## I.   STANDARD OF REVIEW

Rule 12(b)(1) Standard

The plaintiff bears the burden of establishing the existence of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *see also Const. Party of Pa. v. Aichele,* 757 F.3d 347, 357 (3d Cir. 2014) ("A motion to dismiss for want of standing is ...properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter."). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen*

---

[2] 18 Pa. C.S. § 2804; 2805
[3] Count V is incorrectly listed as a duplicative "Count IV" within Plaintiffs' Complaint.

*v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) states that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). In *Iqbal*, the Supreme Court outlined a two-part analysis that district courts must conduct when reviewing a complaint challenged under 12(b)(6). *See Flower v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009).

In *Fowler*, this Court held that, following *Iqbal*, motions to dismiss for failure to state a claim in civil cases should be subject to a two-part analysis.[4] *Fowler*, 578 F.3d at 210–211. First, the court should separate the factual and legal elements of a claim; it must accept any well-pleaded facts as true but may disregard any legal conclusions. *Id*. Second, the court must determine whether the well-pleaded facts are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. If the well-pleaded facts do no more than permit the court to infer the mere possibility of misconduct, the complaint has not "shown" that the pleader is entitled to relief.[5] *Id*.

The Court recognized in *Fowler* that both *Twombly* and *Iqbal* specifically repudiated the earlier standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which permitted dismissal of a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Fowler*, 578 F.3d at 210.

A complaint must do more than allege the plaintiff's entitlement to relief, but instead must "show" such entitlement with its facts in order to survive a motion to dismiss. *Id*. Therefore, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950).

Although this Court must accept all well pleaded facts in the complaint as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation

---

[4] In *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), c*ert. denied*, 132 S. Ct. 1861 (2012), the Court added the step of first identifying the elements of the plaintiff's cause of action.

[5] *Twombly* and *Iqbal* are not satisfied by the presence of *any* factual allegations, but only by factual allegations sufficient to support a plausible, rather than simply conceivable, claim.

omitted).  Because Fed. R. Civ. P. 8 (a)(2) requires a showing, rather than a blanket assertion, of entitlement to relief, courts evaluating the viability of a complaint must look beyond conclusory statements and determine whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007).

Indeed, it is not sufficient to allege mere elements of a cause of action; instead a complaint must allege facts "to raise a right to relief above the speculative level."  *Umland v. Planco Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (*quoting Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Examination of the context of the claim, including the underlying substantive law is therefore necessary in order to properly assess plausibility.  *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (*citing In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 320, n. 18 (3d Cir. 2010)).

## II.   ARGUMENT

### A.  PLAINTIFFS, MR. R.R. and MS. N.R., FAIL TO STATE ANY CLAIMS IN THEIR OWN RIGHT.

As a general rule, "a litigant may only assert his own constitutional rights or immunities." *United States v. Raines*, 362 U.S. 17, 22 (1960); *see also McGowan v. Maryland*, 366 U.S. 420, 429 (1961) (quoting *Raines*); *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (quoting *Raines* and *McGowan*).  "[O]ne cannot sue for the deprivation of another's civil rights."  *O'Malley*, 477 F.2d 789.  "Only persons actually deprived of their individual civil rights can redress such

rights. *Id. at 789 n. 2* (quoting *United States v. Biloxi Mun. Sch. Dist.*, 219 F.Supp. 691, 694 (S.D. Miss. 1963), *aff'd*, 326 F.2d 237 (5th Cir. 1964)).

A parent, not acting in a representative capacity, lacks standing to sue for the deprivation of the civil rights of his or her children. *Rabold v. "The Syndicate" Monroe Cty., Pa. Charter,* No. 3:06-cv-2474, 2007 WL 43988, at *1 (M.D. Pa. Jan. 4, 2007); *Tyree v. Smith*, 289 F. Supp. 174, 175 (E.D. Tenn. 1968). Despite identifying themselves in the caption as having claims against the District in their own right, Plaintiffs Mr. R.R. and Ms. N.R. do not assert any individual claims throughout the entirety of the Complaint. All allegations within Plaintiffs' Complaint concern claims of harm exclusively asserted by J.R, and not by Mr. R.R. or Ms. N.R. Plaintiffs have failed to state any individual claims with respect to all Counts of Plaintiffs' Complaint. Therefore, all claims asserted by Mr. R.R. and Ms. N.R. in their own right must be dismissed.

## B. PLAINTIFFS FAIL TO STATE A CLAIM OF A "STATE CREATED DANGER" THEORY UPON WHICH RELIEF CAN BE GRANTED.

The state-created danger doctrine is one theory used to assert a claim for harm to one's bodily integrity. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir.2008) (recognizing that "[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment," but explaining that the State lacks an affirmative obligation to protect its citizens from harm to that interest unless an exception to that principle, such as the state-created danger doctrine, applies).

The general rule under the Due Process Clause is that the state has no affirmative duty to protect its citizens from harms caused by other private citizens. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney*, the Supreme Court recognized one exception to that rule for situations in which the state takes physical custody of a person (through, e.g., incarceration or institutionalization) and thus creates a "special

10

relationship" obligating it to protect the citizen. *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir.2013). The Third Circuit has concluded that the special relationship theory does not apply to children attending public schools. *See D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1371–72 (3d Cir.1992) (en banc).

DeShaney also alluded to another exception which imposes a similar duty to protect when "the state's own actions create the very danger that causes the plaintiff's injury." *Kneipp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir.1996).  To assert a claim under the state-created danger doctrine, plaintiffs must show that:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts ... and (4) a state actor *affirmatively* used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.  *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir.2006)(emphasis added).

The fourth element of the state-created danger test requires an affirmative act on the part of a state official to place a plaintiff in danger. *Bright*, 443 F.3d at 281. If allegations in a complaint are "at their core, [ ] omissions, not commissions—inactions rather than actions," the fourth prong cannot be met. *Phillips*, 515 F.3d at 236. The Third Circuit has cautioned that while "the line between action and inaction is not always easily drawn," courts should be wary of claims which attempt to transform "[a]ny and all failures to act ... into an affirmative exercise of authority." *Morrow*, 719 F.3d at 178. Courts must assess at this prong whether state officials "created or increased the risk" themselves, or whether they simply "might have done more" to protect individuals from harm. *Id*. at 179.

This Court has analyzed this standard in the context of a claim involving student-on-student sexual assault where parents claimed that the school had failed to adequately train staff and failed

to take appropriate remedial measures to prevent such harm. *See MDB v. Punxsutawney Christian Sch.,* 386 F. Supp. 3d 565 (W.D. Pa. 2019). This Court granted the school's motion to dismiss the state-created danger claim holding:

> The Third Circuit has repeatedly rejected state-created danger claims involving peer harassment or violence, even when school officials allegedly knew of the dangerous conditions ultimately resulting in injury to the plaintiffs, when those officials did not affirmatively act to create the danger. See [*Morrow* at 179]; *Brown v. Sch. Dist. of Phila.*, 456 F. App'x 88, 90 n.5 (3d Cir. 2011) (holding that school's failure to expel or punish a violent student is not an affirmative act); *D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch.*, 972 F.2d 1364, 1370 (3d Cir. 1992) (holding that school's failure to adequately remediate known physical and sexual misconduct by students is not an affirmative act). *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 589 (W.D. Pa. 2019).

In *Brown v. Sch. Dist. of Philadelphia*, 456 F. App'x 88 (3d Cir. 2011), the Third Circuit upheld a dismissal of a state created danger claim. In *Brown*, the plaintiff, a special needs student, was sexually assaulted by students who improperly entered the school auditorium. *Id.* at 89. The plaintiff brought a state created danger claim, based upon the allegations the school did not provide her with an assistant or refused to discipline or expel certain students. *Id.* However, the District Court dismissed the claim on the basis the plaintiff could not establish the fourth element – that no state affirmatively acted to create the danger which led to her assault, or to make her more vulnerable to it. Id. at 91. On appeal, the Third Circuit affirmed the dismissal and stated the, "lack of action perhaps contributed in some way to tragic consequences for Brown and her family, but the School District's lack of affirmative action is, nonetheless, fatal to Brown's § 1983 claim." *Id.* at 92. *See Lockhart v. Willingboro High School*, 170 F. Supp. 3d 722, 732 (holding that pursuant to the state created danger doctrine, there can be no liability because the defendants did not foster or promote the assault to occur).

As described above, Plaintiffs' state created danger claim is entirely based on the District's alleged *failure* to act by "*failing* to supervise its students, by *failing* to hire, instruct and train

wrestling coaches who would act appropriately and in the best interest of its students, and by subsequently *failing* to ensure Plaintiff J.R.'s safety." (C ¶ 51) (emphasis added).[6] Plaintiffs claim that "Defendant District's actions were predicated on a *failure to act* in light of a known risk. (C ¶ 52) (emphasis added).

Thus, Plaintiffs do not allege that the District affirmatively used its authority in the way required in order to satisfy the fourth prong of a state created danger theory. *See Morrow*, 719 F.3d 160 (3d Cir. 2013) (holding that school district failure to expel a student did not establish that school officials affirmatively created or enhanced a danger to bullied students and merely restating the school officials' inaction as an affirmative failure to act did not alter the passive nature of the alleged conduct). As a result, Plaintiffs have failed to state a claim upon which relief can be granted with respect to this claim and Count I of Plaintiffs' Complaint should be dismissed.

## C. PLAINTIFFS FAIL TO STATE A VIABLE CLAIM OF NEGLIGENCE AGAINST THE DISTRICT.

The Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA") provides in relevant part that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541. However, the PPSTCA waives sovereign immunity for certain negligent acts of an agency or its employees including claims arising from:

> "Conduct which constitutes an offense enumerated under section 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the Commonwealth party which constitute negligence." 42 Pa.C.S.A. § 8542(b)(9).

---

[6] While Plaintiffs assert that Defendants Lydic and Galando engaged in inappropriate hazing towards its students, the factual allegations of Plaintiffs' Complaint do not describe any affirmative acts on their part and are limited to allegations of a failure to act.

In other words, in order for this exception to the PPSTCA to apply, the Plaintiffs must demonstrate that the District's alleged acts or omissions were the proximate cause of J.R.'s sexual assault.

A finding of negligence depends on whether a reasonable person should have foreseen the likelihood or risk of harm to the person injured and on whether the harmful consequences could reasonably have been foreseen and prevented by the exercise of reasonable care. *Printed Terry Finishing Co., Inc. v. City of Lebanon*, 247 Pa. Super. 277, 372 A.2d 460 (1977); *Lambert v. PBI Industries*, 244 Pa. Super. 118, 366 A.2d 944 (1976). Almost all accidents can be avoided if the special manner of their occurrence could have been foreseen. However, a defendant's duty of care is not based on hindsight**.** 2 Summ. Pa. Jur. 2d Torts § 20:41 (2d ed.) (citing *Fuller v. Pennsylvania R. Co.*, 371 Pa. 330, 89 A.2d 795, 34 A.L.R.2d 820 (1952); *Blake v. Fried*, 173 Pa. Super. 27, 95 A.2d 360 (1953).

The United States District Court of Eastern Pennsylvania has addressed the issue of foreseeability of student-on-student sexual assault in its decision in *Reichert v. Pathway Sch.*, 935 F. Supp. 2d 808, 818 (E.D. Pa. 2013). *Reichert* concerned the case of a student who was repeatedly sexually abused by an older student while on school premises. The Court addressed the issue of whether this harm was foreseeable to the District holding that:

> "[f]oreseeability exists if there is an awareness on the part of the state actors that rises to [the] level of actual knowledge or "an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 238 (3d Cir.2008). Put another way, at the time of its state action, the District must have had sufficient reason to be aware of the risk that the harm might occur.
>
> The District's actions in placing [the victim] at [the special education school] were not taken with sufficient notice of harm. When the decision was made, the District was not aware of a concrete risk that [the victim] might be sexually assaulted on [...] school grounds. In fact, its understanding was to the contrary: [the special education school] had been approved by the state as an alternative school

for children with special education needs. The District's previous experience with [the special education school] had not resulted in any problems, and **it had no knowledge of any previous sexual assaults that had occurred** at [the special education school]. It was unforeseeable that [the victim's] experience while attending [the special education school] would diverge so radically from the experience of others.

*Reichert v. Pathway Sch.*, 935 F. Supp. 2d 808, 818–19 (E.D. Pa. 2013) (emphasis added).

Based on this standard, the alleged harm to J.R. by way of sexual assault perpetrated was not foreseeable to the District.  Plaintiffs fail to allege that District administrators or the District's Board of Directors were aware of any alleged incidents of sexual assault prior to J.R.'s alleged assault. Throughout the Complaint, Plaintiffs vaguely intimate that District personnel, Defendants Galando and Lydic, were aware of hazing activities, without specifically identifying the persons who were actually told about specific hazing incidents before J.R.'s alleged assault.   More importantly, there are no allegations that any reports were made to the District's administration or to the Board of Directors of alleged hazing activities and/or student-on-student sexual assaults, prior to the incident involving Plaintiff, J.R.

Throughout the Complaint, Plaintiff allege: (1) that Defendant Galando walked in after J.R. was being hazed, asked what was going on, and was told nothing about the incident (C ¶ 25); (2) that Defendants Galando and Lydic knowingly left the students unsupervised (C ¶ 28); (3) that Defendants Galando and Lydic were aware of the hazing and knew the existence and location of the wooden stick (C ¶ 30); and (4) that after witnessing one of the hazing incidents, Defendant Lydic told the offending student to be careful of the cameras located near the practice gym (C ¶ 31).

Again, absent from all of these allegations is any assertion that District personnel were aware of any hazing prior to J.R.'s alleged assault. Under the standard for foreseeability outlined in the *Reichert* case above, the District was not on notice of J.R.'s potential for being the victim of

sexual assault as the District's duty of care cannot be based on hindsight. Accordingly, Plaintiffs have failed to allege the essential element of foreseeability for their negligence claim. Because Plaintiffs have failed to sufficiently demonstrate a claim for negligence based on J.R.'s alleged sexual assault, the sexual assault exception to the PPSTCA does not apply and the District, as a local agency, is immune to this claim.

Plaintiffs' negligence claims should also be dismissed because they cannot, as a matter of law, establish the requisite element of causation. "To prove causation, a demonstration that the breach of duty was both the proximate cause and actual cause of injury was required." *Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super. Ct. 2010). A plaintiff must establish more than that the purportedly negligent act is "one of the happenings in a series of events leading up to an injury," as "[e]ven if the requirement of actual causation is satisfied, there remains the issue of proximate or legal cause." *Id.* (citation omitted).

An act is a proximate cause of an injury if it is "a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Id.* (concluding that a company's negligence was excused where individual's "extraordinary breach" of safety measures was "not reasonably foreseeable as a normal" consequence of negligence); *see also Hall v. Millersville Univ.*, 400 F. Supp. 3d 252, 273 (E.D. Pa. 2019). Where "a myriad" of "matters" other than the defendant's conduct have a "far greater effect" in bringing about an injury, even the conduct of a negligent defendant will not be a "substantial factor in producing the harm." *Heeter v. Honeywell Int'l Inc*, 706 F. App'x 63, 67 (3d Cir. 2017).

Based on the allegations of Plaintiffs' Complaint, any physical harm suffered by J.R. is directly attributable only to his fellow students, S.B. and Defendants W.S. and R.S. With respect to the District, Plaintiffs contend only that it failed to intervene to stop the actions of independent

third parties. As a result, the District could not have been the legal, proximate cause of J.R.'s alleged injuries which Plaintiffs attribute to the conduct of three independent individuals.

Relatedly, the alleged conduct of J.R.'s teammates constitutes a superseding cause that, as a matter of law, precludes liability on the part of the District. "In determining whether an intervening force is a superseding cause, the test is whether the intervening conduct was so" extraordinary or outrageous that it could not have been reasonably foreseeable. *Powell v. Drumheller*, 653 A.2d 619, 623 (Pa. 1995); *see also Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 495 (3d Cir. 1985); *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 565 (W.D. Pa. 2015) ("The Pennsylvania Supreme Court held that the act of a third person in committing an intentional tort or crime is a superseding cause."); Restatement (Second) of Torts § 448.

Plaintiffs allege that S.B. and Defendants W.S. and R.S. committed the intentional tort of assault and battery upon J.R. leading to the harm alleged under of his claim of negligence.[7] The conduct of S.B. and Defendants W.S. and R.S. is therefore a superseding cause of the harm to J.R. as a matter of law. As a result, Plaintiffs have also failed to allege the essential element of proximate cause for a negligence claim.

Lastly, to prove negligence under Pennsylvania law, a plaintiff must establish that "the defendant had a duty to conform to a certain standard of conduct." *Pyeritz v. Commonwealth*, 613 Pa. 80, 32 A.3d 687, 692 (2011). Here, Plaintiffs assert that the District owed a duty of care to the Plaintiffs by way of the District's "special relationship" with its students to ensure they are safe and have their emotional and physical well-being protected while on school premises. (C ¶ 71). As discussed above, the Third Circuit has rejected the special relationship theory as applying to children attending public schools. *See D.R. by L.R. v. Middle Bucks Area Vocational Technical*

---

[7] Plaintiffs also assert a claim of assault and battery against the District.  The District is immune to such claims for reasons discussed below.

*Sch.*, 972 F.2d 1364, 1371–72 (3d Cir.1992) (en banc). Therefore, Plaintiffs have failed to allege a sufficient basis for a duty of care owed from the District to J.R. necessary for their claim of negligence.

Because Plaintiffs have failed to sufficiently allege a claim for negligence based on J.R.'s alleged sexual assault, the sexual assault exception to the PPSTCA does not apply and the District, as a local agency, is immune to this claim. Plaintiffs have therefore failed to state a claim upon which relief can be granted against the District, and Count III of Plaintiffs' Complaint must be dismissed.

### D.  PLAINTIFFS FAIL TO STATE A VIABLE CLAIM OF NEGLIGENCE PER SE AGAINST THE DISTRICT.

A party is negligent per se when they have violated a statute designed to protect the public harm. *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014). To establish negligence per se, a plaintiff must satisfy four criteria: 1) the purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; 2) The statute or regulation must clearly apply to the conduct of the defendant; 3) The defendant must violate the statute or regulation; and 4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries. *Id.*

Plaintiffs base their negligence per se claim on an alleged violation of the Piazza Antihazing Law. Specifically, they allege violations of the sections of the law which prohibit Organizational and Institutional Hazing. 18 Pa. C.S. §§ 2804; 2805. Under these statutes, an organization or institution is liable if it "intentionally, knowingly or recklessly promotes or facilitates" hazing or aggravated hazing as defined by 18 Pa. C.S. §§ 2802; 2803.

The question of the type of conduct sufficient to trigger liability under the organizational or institutional hazing statutes of the Piazza Antihazing Law was recently addressed by the United

States District Court of the Middle District of Pennsylvania in its decision in *Jean v. Bucknell U.*, 4:20-CV-01722, 2021 WL 1516467 (M.D. Pa. Apr. 16, 2021). *Jean v. Bucknell U.* involved a claim of negligence per se pursuant to the Piazza Antihazing Law brought by a student who had been injured during a fraternity initiation ritual involving alcohol consumption.

The Court ultimately determined that Bucknell University's conduct did not rise to the level of intentional, knowing, or reckless facilitation or promotion of the hazing noting several factors including: 1) Bucknell's asserted conduct did not facilitate or promote any incident of hazing; 2) the plaintiff did not allege that Bucknell knew about the hazing, that Bucknell approved it, or in any way promoted or funded it; and 3) the plaintiff did not contend that Bucknell actively ignored a plaintiff's reports of hazing in a way that resulted in future hazing. *Id.* at *8.

The Court also noted that even if the facilitation or promotion element could be established, the Complaint had not alleged facts showing it was intentional, knowing, or reckless as only information even suggesting that Bucknell might have had notice of hazing was an incident occurring over ten years prior to the hazing of the plaintiff. The Court noted that the Plaintiff did not report any hazing to Bucknell. The Court therefore granted Bucknell's motion to dismiss the claim for negligence per se. *Id.*

Similarly here, Plaintiffs fail to allege that the District actively facilitated or promoted any hazing. Though Plaintiffs assert that the District had knowledge of the hazing, they fail to describe how the District was actually made aware of this hazing and whether this knowledge was gained prior to the incident involving J.R. Plaintiffs do not allege that the District promoted or funded the hazing. Plaintiffs fail to allege that the District had knowledge of any hazing prior to J.R.'s assault. Plaintiffs do not allege that the hazing was actually reported to the District and that this report was

19

ignored leading to future hazing. Plaintiffs have therefore failed to allege that the District promoted or facilitated hazing.

Plaintiffs allegations amount to a mere claim that District personnel failed properly to supervise students for forty five (45") minutes every day between the end of the school day and the arrival of Defendants Lydic and Galando for wrestling practice. (C ¶ 60). Plaintiffs' allegations can be at best described as a claim of negligence which, for reasons described above, fail because the harm to J.R. was not sufficiently foreseeable to the District. In any case, this conduct does not rise to the level of intentional, knowing, or recklessness necessary to incur liability under the Piazza Law. By bringing this claim against the District, Plaintiffs are in essence requesting that this Court impose strict liability upon the District for failing to prevent an incident of hazing before they had any reason to know that it was likely to occur. The conduct described within Plaintiffs' Complaint is well below the high standard of intentional, knowing, or reckless conduct required for liability under the Piazza Antihazing Law.

Additionally, Plaintiffs fail to allege that J.R. was subjected to hazing or aggravated hazing as defined by the Piazza Antihazing Law. In order to meet either definition under the statute, the alleged conduct directed to J.R. by his fellow students must be said to have been done "for the purpose of initiating, admitting or affiliating [J.R.] into or with [the wrestling team], or for the purpose of continuing or enhancing [J.R.'s] membership or status in [the wrestling team]. *See* 18 Pa. C.S. §§ 2802; 2803.

Plaintiffs do not allege that any of the conduct directed towards J.R. by his fellow students was for the purpose of initiating, admitting or affiliating him onto the wrestling team nor is it alleged that this conduct was for the purpose of continuing or enhancing J.R.'s membership or

status on the wrestling team. Plaintiffs have therefore failed to allege that J.R. has been subjected to hazing or aggravated hazing as defined by the Piazza Antihazing Law.

Accordingly, Plaintiffs have failed to allege a violation of the statute necessary for their claim of negligence per se. Plaintiffs therefore have failed to state a claim upon which relief can be granted against the District and Count II of Plaintiffs' Complaint must be dismissed.

### E. THE DISTRICT IS IMMUNE FROM PLAINTIFFS' INTENTIONAL TORT CLAIMS.

As discussed above, the PPSTCA provides in relevant part that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541. However, the PPSTCA waives sovereign immunity for certain negligent acts of an agency or its employees. 42 Pa.C.S.A. § 8542(b). Under the PPSTCA, "negligent acts" do not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct. *Id.* at (a)(2).

As a general rule, a local agency may not be held liable for intentional torts. *Id.*; *Overstreet v. Borough of Yeadon*, 475 A.2d 803, 803-04 (Pa. Super. Ct. 1984); *see also Lory v. City of Philadelphia*, 674 A.2d 673, 675-76 (Pa. 1996) (emphasizing that a local agency can only be held liable for certain negligent acts). Accordingly, school districts are routinely granted immunity on intentional-tort claims. *See, e.g., Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 628 (E.D. Pa. 2004) (invasion of privacy suit); *Kessler v. Monsour*, 865 F. Supp. 234, 240-41 (M.D. Pa. 1994) (IIED suit); *Petula v. Mellody*, 631 A.2d 762, 765 (Pa. Commw. Ct. 1993) (defamation suit); *Pascocciello v. Interboro Sch. Dist.*, CIV.A.05-5039, 2006 WL 1284964, at *8 (E.D. Pa. May 8, 2006) (holding that local agencies are immune from the intentional tort claims of intentional infliction of emotional distress and assault and battery).

Under this standard, the District is immune from Plaintiffs' claims of the intentional torts of intentional infliction of emotional distress and assault and battery. Plaintiffs have therefore failed to state a claim upon which relief can be granted against the District with respect to these claims. As a result, Counts IV and V of Plaintiffs' Complaint must be dismissed with prejudice.

## F.  PLAINTIFFS CANNOT CLAIM ATTORNEY FEES UNDER THEIR STATE LAW CLAIMS.

As stated above, Plaintiffs have requested the award of attorney fees in connection with their state law claims of negligence, negligence per se and intentional infliction of emotional distress.

Pennsylvania adheres to the "American Rule," under which litigants are responsible for their own counsel fees unless otherwise permitted by express statutory authority. *Petow v. Warehime*, 2010 PA Super 95, 996 A.2d 1083 (2010).  Plaintiffs have failed to provide, nor does there exist, express statutory for the award of attorney fees for Plaintiffs' state law claims. *See also Ramsey v. Summers*, 10-CV-00829, 2011 WL 811024, at *3 (W.D. Pa. Mar. 1, 2011) (granting dismissal of requests for attorney fees based on claims of negligence per se and negligence); *Bland v. Bland*, 50 Pa. D. & C.2d 44, 52 (Pa. Com. Pl. 1970) (holding that attorney fees are not recoverable based on a claim of intentional infliction of emotional distress). Additionally, the Piazza Antihazing Law, on which Plaintiffs base their claim of negligence per se, does not provide authority for an award of attorney fees for a violation of the statute.

Accordingly, Plaintiffs' claims for attorney fees in connection with its state law claims in Counts II, III, and V must be dismissed with prejudice.

## III.   <u>CONCLUSION</u>

For the reasons set forth above, the Defendant, Greater Latrobe School District respectfully requests that the Court find that Plaintiffs have failed to state a claim for which relief can be granted

with respect to all counts of Plaintiffs' Complaint. Accordingly, Plaintiffs' Complaint must be dismissed with prejudice. In the alternative, the District respectfully requests that the Court find that Plaintiffs, Mr. R.R. and Ms. N.R., have failed to state a claim for which relief can be granted with respect to all counts asserted in their own right. Additionally in the alternative, the District respectfully requests that the Court find that Plaintiffs have failed to state a claim for which relief can be granted with respect to any claims for attorney fees as part of Counts II, III, and V of Plaintiffs' Complaint.

Respectfully submitted,

**ANDREWS & PRICE**

By: /s/  Joseph W. Cavrich
Joseph W. Cavrich, Esq.
P.A. I.D. No. 52693
/s/ Salvatore Bittner
Salvatore Bittner, Esq.
PA I.D. No. 322929
1500 Ardmore Boulevard, Suite 506
Pittsburgh, PA  15221
(412) 243-9700
Attorneys for the Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that I have complied with the Court's Standing Order of January 31, 2020, which obligated the undersigned counsel to make a good faith effort to meet and confer with Plaintiff's counsel before filing the within motion to determine whether any pleading defects were curable by amendment, thereby obviating part or all of the motion.

/s/ Joseph W. Cavrich          
Joseph W. Cavrich, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

/s/ Joseph W. Cavrich
Joseph W. Cavrich