**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| J.R., a minor, by and through his parents and natural guardians, Mr. R.R. and Ms. N.R., | ) | No. 2:21-cv-01088-RJC |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Robert J. Colville |
| vs. | ) | |
| | ) | |
| GREATER LATROBE SCHOOL DISTRICT, a Pennsylvania Municipal Corporation, CARY JAMES LYDIC, an adult individual, DAVID F. GALANDO, an adult individual, R.S., a minor individual, and W.S., a minor individual, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION**</u>

Robert J. Colville, United States District Judge

Before the Court are the following Motions: (1) the Motion to Dismiss (ECF No. 54) filed by Defendant Greater Latrobe School District (the "District"); (2) the Motion to Dismiss (ECF No. 56) filed by Defendant Cary James Lydic ("Lydic"); and (3) the Motion to Dismiss (ECF No. 69) filed by Defendant David F. Galando ("Galando"). In this action, Plaintiff J.R. ("Plaintiff"), a minor, by and through his parents and natural guardians, Mr. R.R. and Ms. N.R., asserts claims against the District, Lydic, Galando, R.S., and W.S. arising out of alleged hazing incidents and an alleged sexual assault perpetrated on Plaintiff by R.S. and W.S., Plaintiff's teammates on the District's junior varsity wrestling team, while Plaintiff was a student athlete on the District's wrestling team. Lydic and Galando were coaches for the District's wrestling team. The District seeks dismissal with prejudice pursuant to Rule 12(b)(6) of each of the claims (Counts I; II; V; and X) set forth against it in Plaintiff's Second Amended Complaint (ECF No. 50) (the "Complaint").

1

District's Mot. ¶ 2, ECF No. 54.  Alternatively, the District asserts that Plaintiff fails to state a claim for which relief can be granted with respect to any claims for attorney fees as part of Counts II, V, and X.  *Id.* at ¶ 4.  Lydic also seeks dismissal with prejudice of the claims set forth against him (Counts III, VI, and XI) by way of his Motion to Dismiss; as does Galando in his Motion (Counts IV, VII, and XII).

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  The Motions have been fully briefed and are ripe for disposition.

## I.    Factual Background & Procedural History

In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

Plaintiff is a student at Greater Latrobe High School.  Compl. ¶ 15, ECF No. 50.  During his freshman year, Plaintiff was accepted into the District's Junior Varsity Wrestling program, where he was coached primarily by Lydic and Galando.  *Id.*  Soon after the 2019-2020 wrestling season began, Plaintiff witnessed various acts of hazing committed by several other members of the wrestling team, and specifically witnessed the older wrestlers, particularly Defendants R.S. and Defendant W.S., hitting or smacking younger teammates with a wooden stick that was kept in or near the practice gym.  *Id.* at ¶ 16.  Plaintiff was personally attacked for the first time in December of 2019, when R.S., Plaintiff's ninth-grade teammate, struck Plaintiff with the wooden stick on the back of Plaintiff's leg.  *Id.* at ¶ 17.  R.S. communicated to Plaintiff that Plaintiff should accept and expect such abuse as a part of being a member of the wrestling team, and that Plaintiff would be expected to inflict similar abuse on other, typically younger members of the wrestling team.  *Id.* at ¶ 18.  Lydic and Galando were aware of and encouraged the behavior of team members

2

such as R.S. and W.S. as a means of maintaining "tradition" and indoctrinating new members of the team.  Compl. ¶ 19, ECF No. 50.

At approximately 2:50 p.m. on January 8, 2020, Plaintiff arrived at the gymnasium for wrestling practice.  *Id.* at ¶ 20.  As he was preparing to put on his shoes, Plaintiff was tackled by W.H., a ninth-grade minor teammate, and was subsequently pinned to the ground facedown by W.H., R.S., W.S., and a fourth teammate.  *Id.* at ¶ 21.  While immobilized, another teammate, S.B., retrieved rope and/or a net, which he used to bind Plaintiff's feet and hands.  *Id.* at ¶ 22.  W.H. and a number of other teammates continued to restrain Plaintiff on the ground after his feet and hands were bound.  *Id.*  During the duration of this lengthy assault, several other teammates also entered the gymnasium to witness or assist in the hazing incident.  *Id.*

While Plaintiff was being assaulted and hazed, Defendant Galando looked into the auxiliary gym from the doorway and observed the assault and hazing as it took place, and proceeded to exit the doorway without taking any action.  Compl. ¶ 23, ECF No. 50.  Thereafter, R.S. retrieved some water and proceeded to pour water over Plaintiff's face in a crude method of waterboarding, and Plaintiff was kicked several times by R.S. and/or W.S and/or others.  *Id.* at ¶ 24.  W.S. subsequently retrieved the stick that had previously been used by R.S. to assault Plaintiff, and W.S. and/or other teammates began striking and/or jabbing Plaintiff with the stick as he remained restrained on the ground.  *Id.* at ¶ 25.  W.S. and/or other teammates then took the stick and rammed or poked it through Plaintiff's pants and into the buttocks of Plaintiff approximately five times, all while Plaintiff was being restrained by R.S. and other teammates.  *Id.*  In doing so, W.S. and/or other teammates purposefully used the stick to penetrate the anus of Plaintiff by forcing Plaintiff's shorts into his anus with the stick.  *Id.*  W.H., W.S., and R.S. laughed and made jokes during the entirety of this incident, and R.S. later admitted in his juvenile delinquency

proceeding that he took advantage of his physical ability and knew he "had control over" his victims, and in particular, Plaintiff.  *Id.* at ¶ 26.

R.S. left the gymnasium towards the end of the assault to retrieve his phone and began to take a video and/or photographs of the incident.  Compl. ¶ 27, ECF No. 50.  Plaintiff was eventually able to free his hands from the rope and push his assailants off of him, at which time the assailants again attempted to tie him up with the rope a second time.  *Id.* at ¶ 28.  Despite his feet still being bound, Plaintiff stood up and was promptly knocked back to the ground, where the assault continued.  *Id*.  Thereafter, Plaintiff finally managed to fight off his assailants and gain control of the weapon used in the assault.  *Id*.  At that point, Galando appeared for a second time, noticed the rope and/or netting, and questioned the students regarding the incident.  *Id.* at ¶ 29.  The assailants denied any wrongdoing, and Plaintiff was unable to verbalize the incident at that time.  *Id*.

On January 8, 2020, and on every practice-day preceding the incident, the ninth-grade wrestlers, consisting of approximately fifteen (15) minor participants, were left completely unsupervised from 2:45p.m. until 3:30p.m., for a period of unsupervised time of forty-five (45) minutes every day.  Compl. ¶ 30, ECF No. 50.  The District, Lydic, and Galando left the minors unsupervised because wrestling practice was scheduled to begin at 3:30 p.m. due to the fact that the seventh- and eighth-grade wrestling team members did not finish classes until 3:15 p.m.  *Id.* at ¶ 31.  Plaintiff avers that the District either knowingly allowed these minor students to be unsupervised or were negligently unaware that students were being left unattended, and that, in either scenario, the District "was manifestly negligent in their supervision of the minor students entrusted to their care by their unknowing parents, and of Plaintiff in particular."  *Id.* at ¶ 32.  Plaintiff further avers that "Defendant District was also negligent in failing to have [an] anti-hazing policy and procedures in place, or if it did, [in failing] to enforce them and/or to properly train and

instruct Defendants Lydic and Galando on identifying and eliminating sports-related hazing." *Id.* at ¶ 33.

Lydic and Galando were aware of prior hazing that had taken place on the wrestling team, and were also aware of the location of the wooden stick used in Plaintiff's assault.  Compl. ¶ 34, ECF No. 50.  After witnessing a hazing incident that preceded Plaintiff's assault, Lydic advised the offending student to be careful to avoid the cameras located near the practice gym.  *Id.* at ¶ 35. Plaintiff avers that Lydic and Galando:

> were not only negligent in the supervision of their athletes[,] but were grossly negligent in their failure to report these assaults, and thereby emboldened the athletes to continue by failing to penalize them for same.  [Lydic and Galando] created a climate of fear and intimidation, and a team culture of betrayal from coaches who should be their mentors and protectors, and older students who should be their leaders and role models.

*Id.* at ¶ 36.  Plaintiff avers that he has suffered and continues to suffer from substantial harm as a result of the incidents and conduct described herein.  *Id.* at ¶¶ 37-40.

Plaintiff filed the Complaint on January 12, 2022.  Plaintiff sets forth the following claims in the Complaint: (1): Count I – Fourteenth Amendment State-Created Danger pursuant to 42 U.S.C. § 1983 against the District; (2) Count II – Negligence Per Se against the District; (3) Count III – Negligence Per Se against Lydic (4) Count IV – Negligence Per Se against Galando; (5) Count V – Negligence against the District; (6) Count VI – Negligence against Lydic; (7) Count VII – Negligence against Galando; (8) Count VIII – Assault and Battery against R.S.; (9) Count IX – Assault and Battery against W.S.; (10) Count X – Intentional Infliction of Emotional Distress against the District; (11) Count XI – Intentional Infliction of Emotional Distress against Lydic; (12) Count XII – Intentional Infliction of Emotional Distress against Galando; (13) Count XIII – Intentional Infliction of Emotional Distress against R.S.; (14) Count XIV – Intentional Infliction

of Emotional Distress against W.S.[1]  The Court notes that it temporarily consolidated this case

with a related matter at 2:21-cv-690, ECF No. 19, and later vacated the Orders consolidating the

cases following communications from counsel in both matters, ECF No. 23.

The District filed its Motion to Dismiss, along with a Brief in Support (ECF No. 55), on

January 21, 2022.  Plaintiff filed a Brief in Opposition (ECF No. 72) to the District's Motion on

February 25, 2022, and the District filed a Reply (ECF No. 75) on March 4, 2022.  Lydic filed his

Motion to Dismiss, along with a Brief in Support (ECF No. 57), on January 25, 2022.  Plaintiff

filed a Brief in Opposition (ECF No. 73) on March 2, 2022, and Lydic filed a Reply (ECF No. 78)

on March 11, 2022.  Galando filed his Motion and a Brief in Support (ECF No. 70) on February

15, 2022, and Plaintiff filed a Brief in Opposition (ECF No. 74) on March 2, 2022.

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In

deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail

on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled

factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S.

Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need

detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide

more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A

"formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v.

Allain*, 478 U.S. 265, 286 (1986)).

---

[1] Following review of the Moving Defendants' Motions, Plaintiff has elected to voluntarily withdraw his claims for intentional infliction of emotional distress (Counts X, XI, and XII) against the Moving Defendants from his Complaint without prejudice, and these claims are thus not at issue at this time.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of

7

the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

## III.   Discussion

The District seeks dismissal of each of the remaining claims set forth by Plaintiff against it.  With respect to Count I, Plaintiff's Section 1983 "state-created danger" claim, the District relies on argument that Plaintiff fails to set forth any affirmative conduct on the part of the District in creating a danger to Plaintiff.  The District asserts that Plaintiff's allegations are limited to passive failures on the District's part to act in light of a known risk, and that the same is insufficient to maintain a claim predicated on a state-created danger.  District's Br. in Supp. 12-14, ECF No.55. Plaintiff argues that he has sufficiently alleged affirmative conduct on the part of the District in creating the danger that directly and foreseeably led to Plaintiff's harm.  Specifically, Plaintiff asserts that such affirmative acts include the scheduling of wrestling practice to begin at a time forty-five minutes after ninth-grade classes were scheduled to end, thus knowingly creating a forty-five-minute period where wrestling team members were unsupervised in the District's auxiliary gym and rendering a discrete set of victims, including Plaintiff, more vulnerable to harm.  Br. in

Opp'n to District Mot. 4, ECF No. 72.  Plaintiff further argues that the District's affirmative conduct includes his allegation that District employees, specifically Lydic and Galando, were aware of and encouraged the hazing activity at issue in this case, including by providing advice to the perpetrators to avoid school video cameras and returning the wooden stick that was used to sexually assault Plaintiff to the offending students.  *Id.* at 5.

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  While individuals have "a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment[,] . . . the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Phillips*, 515 F.3d at 235 (citations omitted); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[The Due Process Clause's] purpose was to protect the people from the State, not to ensure that the State protected them from each other.").  An exception to this general rule is the state-created danger theory, under which the Third Circuit has explained that "the Due Process Clause can impose an affirmative duty to protect if the state's own actions create the very danger that causes the plaintiff's injury." *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013).[2]

---

[2] Another exception to this general rule is the "special relationship" exception, which is not applicable in this context. *See Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 731 (D.N.J. 2015) ("In general, the Court of Appeals has held that the authority that schools have over students during the school day does not create the 'special relationship' necessary for a student to assert a viable due process claim under § 1983." (citing *Morrow*, 719 F.3d at 170)).  Plaintiff has not set forth any argument indicating true reliance on the special relationship exception, and has titled his claim a "state-created danger" claim.  Given the special relationship exception's general inapplicability in the context of schools and students, and given Plaintiff's apparent reliance on only the state-created danger exception, the Court's analysis focuses on the latter.

To establish a meritorious state-created danger claim, a plaintiff must prove the following essential elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citations omitted) (footnotes omitted) (internal quotation marks omitted).

The Third Circuit has emphasized that, "under the fourth element of a state-created danger claim, '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.'" *Bright*, 443 F.3d at 282 (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir.1992)); *see also Middle Bucks*, 972 F.2d at 1373 ("Post-*DeShaney* courts have tracked the quoted Supreme Court's language by asking whether the state actors involved affirmatively acted to *create* plaintiff's danger, or to render him or her more *vulnerable* to it."); *L.R. v. Sch. Dist. of Philadelphia*, 60 F. Supp. 3d 584, 594 (E.D. Pa. 2014), *aff'd*, 836 F.3d 235 (3d Cir. 2016) ("It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." (quoting *Bright*, 443 F.3d at 282)).  While "the line between action and inaction may not always be clear[,]" the Third Circuit has explained that it has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised in some fashion." *Phillips*, 515 F.3d at 235–36; *see also Morrow*, 719 F.3d 177-78 (explaining that, while "the line between action and inaction is not always easily drawn[,]" a plaintiff must do more than simply attempt to "redefine clearly passive inaction as affirmative

acts[.]"); *Middle Bucks*, 972 F.2d at 1374 ("We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." (quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)).

As noted, the District relies on argument that Plaintiff fails to satisfy the fourth element of a state-created danger claim because Plaintiff fails to allege that a state actor *affirmatively* used his or her authority in a way that created a danger to Plaintiff or that rendered Plaintiff more vulnerable to danger than had the state not acted at all.  The Court agrees that Plaintiff's allegations as to the scheduling of wrestling practice at a time forty-five minutes after ninth-grade classes were scheduled to end and a failure to supervise ninth-grade wrestlers during that timeframe tend to fall directly in line with the type of conduct that courts find to constitute passive inaction representing a failure to prevent a potentially predictable harm as opposed to affirmative acts that created or enhanced a danger posed to a plaintiff.  Courts in the Third Circuit routinely find that such allegations of the provision of a high school setting where an assault occurs and the failure to supervise more closely constitute failures to act as opposed to affirmative acts.  *See Pagan v. City of Philadelphia*, No. CIV.A. 11-5178, 2012 WL 1965386, at *6 (E.D. Pa. May 31, 2012) ("These allegations, which fault Defendants for leaving Pagan and other students 'unsupervised and unprotected,' reveal it is not Defendants' affirmative conduct in holding a fire drill—as they were required to do under state law—but their failure to provide adequate security in the stairwell that is alleged to have increased the risk of harm to Pagan."); *see also id.* ("These cases thus refute the suggestion that simply placing a student in a school officials know to be dangerous constitutes the affirmative act necessary to support such claims."); *Middle Bucks*, 972 F.2d 1364, 1376 (3d Cir.

11

1992) ("We readily acknowledge the apparent indefensible passivity of at least some school defendants under the circumstances.  Accepting the allegations as true, viz., that one school defendant was advised of the misconduct and apparently did not investigate, they show nonfeasance but they do not rise to the level of a constitutional violation."); *Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 732 (D.N.J. 2015) ("But providing a high school setting in which an assault occurs without specific warning does not amount to the school Defendants creating the opportunity for criminal conduct victimizing Plaintiff that could not otherwise have occurred.").

While Plaintiff takes issue with the scheduling of wrestling practice at a time when all students on the team could participate, but forty-five minutes after ninth-grade classes were scheduled to end, his Complaint as a whole as to scheduling makes clear that he takes issue with the District's inaction as opposed to affirmative conduct.  *See* Compl. ¶ 57, ECF no. 50 ("Defendant District's actions were predicated on a failure to act in light of a known risk . . . .").  As alleged, Plaintiff takes more issue with the fact that the school permitted ninth-grade students to use, and did not prevent them from using, the gymnasium without supervision before practice.  Plaintiff does not allege that the District affirmatively required students to arrive at the gym at a time forty-five minutes before practice began.  It is the District's failure to supervise, rather than the affirmative act of scheduling practice and classes, that is truly at issue with respect to Plaintiff's allegations surrounding scheduling.  The same cannot support a Section 1983 claim under clear Third Circuit precedent.  The Court finds that Plaintiff's allegations respecting the scheduling of wrestling practice are insufficient to support a Section 1983 claim.

In his Brief, Plaintiff also points to the actions and inactions of Lydic and Galando in arguing that he has stated a Section 1983 claim against the District.  Importantly, Plaintiff has only

asserted a Section 1983 claim against the District in this matter. Because Plaintiff asserts this claim against the District, an "additional wrinkle" is implicated because a school district generally cannot be held vicariously liable for the unconstitutional actions of its employees:

> The Third Circuit has held that a municipality may be "independently liable for a substantive due process violation even when none of its individual employees is liable." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir.2006) (citing *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir.2003)). However, it is well established that a School District, like a municipality, "cannot be liable solely as an employer because there is no respondeat superior theory of municipal liability in § 1983 actions." *Brown*, 318 F.3d at 482. Instead, claims of this nature may only survive dismissal "when the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir.2007) (quoting [*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 704 (1978)]).

*Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 239–40 (W.D. Pa. 2015) (footnote omitted); *see also Patrick v. Great Valley Sch. Dist.*, 296 F. App'x 258, 262 (3d Cir. 2008) ("Municipal employers are not vicariously liable for all constitutional violations that their employees commit. Under *Monell* and its progeny, municipal liability will attach only where a plaintiff establishes that an official policy or custom served as a proximate cause of the asserted constitutional deprivation." (citations omitted)).[3][4]

The United States District Court for the Eastern District of Pennsylvania has explained:

> "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's

---

[3] The Court notes that this issue is, somewhat surprisingly, not addressed in the briefing submitted by the parties. Because the Court believes this issue to be dispositive, and because the Court will permit leave to amend and expects potential additional motion practice and briefing should an amended complaint be filed, the Court anticipates that the parties will be prepared to squarely address this issue moving forward, if necessary.

[4] *See also Keener v. Hribal*, 351 F. Supp. 3d 956, 976 n.10 (W.D. Pa. 2018) ("Courts applying the state created danger theory often lump municipalities and individual state actors together when performing the analysis. *See Sciotto v. Marple Newton Sch. Dist.*, 81 F.Supp.2d 559, 573 (E.D. Pa. 1999). This approach has caused confusion. *See, e.g., Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F.Supp.2d 633, 639 (E.D. Pa. 2011) (discussing the distinction between municipal liability and state-created danger claims and acknowledging that the state-created danger theory by itself is not enough to implicate municipal liability.").

officers." *Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at \*4, 2008 U.S. Dist. LEXIS 50522 at \*10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690, 98 S.Ct. 2018). A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690, 98 S.Ct. 2018. A "custom may be established by proving knowledge of, and acquiescence to, a practice." *Watson*, 478 F.3d at 156. "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Failing to train municipal employees can also be a source of liability, but "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." [*City of Canton v. Harris*, 489 U.S. 378, 385 (1989)]. *See also Kneipp*, 95 F.3d at 1212. A three-part test has been formulated to determine whether a municipality's failure to train or supervise amounts to deliberate indifference. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "[I]t must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

*Lesher v. Zimmerman*, No. 5:17-CV-04731, 2018 WL 2239560, at \*8 (E.D. Pa. May 16, 2018).

Even if Plaintiff had alleged facts that can establish a violation of his Fourteenth Amendment rights in this matter with respect to the actions of the coaches,[5] he fails to sufficiently allege facts supporting a finding that the District could be found liable for the same. As currently pled, Plaintiff's Section 1983 claim seems to rely on an assertion that the District is vicariously liable for the actions of Lydic and Galando, and the same is impermissible in the context of a Section 1983 claim against a school district. With respect to Plaintiff's allegations of the coaches' encouragement of hazing activity on the wrestling team, Plaintiff advances no assertion that the District maintained a formal policy that supported hazing as a means of initiating students to the

---

[5] Given the holdings herein, the Court need not and will not address the same, as there is no Section 1983 claim asserted against the coaches and the Court finds, as explained below, that Plaintiff fails to sufficiently allege that the District had "an adopted practice, custom or policy of deliberate indifference to plaintiff's overall health, safety and welfare." *Dorley v. S. Fayette Twp. Sch. Dist.*, No. 2:15-CV-00214, 2016 WL 3102227, at \*6 (W.D. Pa. June 1, 2016).

wrestling team.  Plaintiff further fails to plausibly allege that any final policy-making official at the District knew of and acquiesced to a well-settled practice of encouraging hazing.  To the contrary, Plaintiff alleges that Lydic and Galando failed to report any hazing activity to the District. *See* Compl. ¶¶ 36; 82; 87; 89, ECF No.  50.  Plaintiff fails to allege that a District official enacted or entertained a policy or custom of encouraging hazing at the District.

While Plaintiff alleges that the District failed to maintain a sufficient anti-hazing policy and failed to sufficiently train Lydic and Galando, he does so in generic, boilerplate fashion.  *See* Compl. ¶ 33, ECF No. 50 ("Defendant District was also negligent in failing to have anti-hazing policy and procedures in place, or if it did, it failed to enforce them and/or to properly train and instruct Defendants Lydic and Galando on identifying and eliminating sports-related hazing."). "To state a claim, Plaintiffs must show that Defendants' failure to train or supervise employees amounted to '"deliberate indifference" to the rights of persons with whom those employees will come into contact.'"  *Lockhart*, 170 F. Supp. 3d at 733 (*Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).  To plausibly state a claim, a plaintiff must do more than generically allege a failure to maintain effective policies or a failure train an employee to prevent a harm that has occurred.  *See id.* ("But nowhere in the Complaint or Amended Complaint do Plaintiffs even mention what policies or practices Defendants had with respect to teacher training, sexual assault training and prevention, and supervision.  Without any facts showing what specific training or supervision was in place or what should have been provided, Plaintiffs cannot support a claim that the training provided was inadequate.").; *see also id.* ("a § 1983 claim for failure to train requires some allegations from which the court can infer that the defendant failed to offer some specific training that would have prevented the deprivation of plaintiff's constitutional rights.").  Plaintiff's Section 1983 claim is deficient for this reason.

The court further finds that Plaintiff has not alleged, at this juncture, facts sufficient to support a finding that any failure to train amounted to deliberate indifference.  With respect to deliberate indifference, the *Lockhart* court explained:

> Ordinarily, deliberate indifference for purposes of failure to train is demonstrated by a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 131 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011).  In certain situations, however, the need for training may be "'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights," even without a pattern of constitutional violations.  *Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. 1197; *Connick*, 131 S.Ct. at 1361 (noting that a single incident may trigger municipal liability where unconstitutional consequences for failure to train are "patently obvious").  In other words, Plaintiffs must show that Defendants were "on notice that, absent additional specified training, it was 'highly predictable'" that employees would make decisions that would violate constitutional rights.  *Connick*, 131 S.Ct. at 1365.  Plaintiff has not stated a claim under either a pattern-of-violation theory or a single-violation theory.

*Lockhart*, 170 F. Supp. 3d at 734-35; *see also Cuvo v. Pocono Mountain Sch. Dist.*, No. 3:18-CV-01210, 2019 WL 1424524, at *7 (M.D. Pa. Mar. 29, 2019) (rejecting conclusory assertions of a failure to train, and explaining that the plaintiffs  "failed to allege any facts from which a factfinder might infer actual or constructive knowledge by the school district's board of directors of a previous pattern at similar constitutional violations, or of the allegedly inadequate training, which is a prerequisite to a finding of deliberate indifference by a municipality[,"] and further that "policies are not deficient simply because they are not the best.").  Plaintiff fails to allege facts to support a finding that any failure to train was accompanied by deliberate indifference.

The allegations in this case are deeply troubling; nonetheless, for the reasons discussed above, this Court is constrained to conclude that Plaintiff has not stated a Section 1983 against the District at this time.  Plaintiff's allegations are completely lacking as to any custom or policy on the part of the District, and are too generic, conclusory, and boilerplate to set forth a plausible claim for a failure to train.  While Plaintiff has already filed two amended complaints in this matter,

the Court cannot conclude with certainty that amendment would be futile as to Plaintiff's Section

1983 claim.  Accordingly, in an abundance of caution, Plaintiff will be granted a final opportunity

to amend his complaint in this matter to attempt to state a Section 1983 claim, if supportable.

Given previous amendments and Plaintiff's failure to plead a plausible Section 1983 claim at this

juncture, the Court does not anticipate permitting further leave to amend.

      In light of the Court's holding above, the only claims that remain pending in this action are

Plaintiff's state law claims against the Defendants in this matter.  "[I]n any civil action of which

the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction

over all other claims that are so related to claims in the action within such original jurisdiction that

they form part of the same case or controversy under Article III of the United States Constitution."

28 U.S.C.A. § 1367(a).  A district court may, however, decline to exercise supplemental

jurisdiction where "the district court has dismissed all claims over which it has original

jurisdiction."  28 U.S.C.A. § 1367(c)(3).  In deciding whether to decline to exercise supplemental

jurisdiction, "the district court should take into account generally accepted principles of 'judicial

economy, convenience, and fairness to the litigants.'"  *Growth Horizons, Inc. v. Delaware Cty.,*

*Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715,

726 (1966)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the

remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

      With respect to judicial economy and convenience, the Court notes that this case is at a

very early stage of the litigation process, as the pleadings are not closed, deadlines for discovery

have yet to be scheduled, and the Court has decided only a single issue raised in one of the three

pending Motions to Dismiss. *See Carnegie-Mellon*, 484 U.S. at 351 ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."). Further, state courts have a strong interest in applying state law. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." (quoting *Gibbs*, 383 U.S. at 726)); *see also Carnegie-Mellon*, 484 U.S. at 349-50 (explaining that the Supreme Court in *Gibbs* "recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties."); *Boyd v. 320 Mt. Prospect LLC*, No. 2:18-CV-8770-SDW-SCM, 2020 WL 3492053, at *4 (D.N.J. May 19, 2020), *report and recommendation adopted*, No. 18-CV-8770 (SDW) (SCM), 2020 WL 3489675 (D.N.J. June 26, 2020) ("The state has a strong interest in interpreting issues of state law, and the Superior Court of New Jersey has a much greater interest in adjudicating state law claims than does this Court.").

In light of the above, the Court will not consider Lydic's and Gallando's Motions at this juncture, and will dismiss the same without prejudice. Plaintiff asserted a single claim in this matter that provided the Court with original jurisdiction, and that claim has now been dismissed. Given the deficiencies in Plaintiff's Second Amended Complaint, amendment may ultimately prove futile with respect to that claim. At this time, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. Matters of state law are more appropriately addressed by state courts, and, in the interest of judicial economy and efficiency, the Court will dismiss Plaintiff's state law claims without prejudice for lack of jurisdiction at this time. To the extent that Plaintiff files an amended complaint in this matter again attempting to set forth a federal

cause of action in addition to state law claims, the Court will consider any motion addressing those claims at that time.  Given that the Court's dismissal of Plaintiff's Section 1983 claim deprives the Court of original jurisdiction, the Court declines to wade into the merits of Plaintiff's state law claims at this time.  Barring curative amendment to his federal claim, Plaintiff may refile his state law claims in the appropriate forum if he so chooses.  Should Plaintiff decline to attempt curative amendment of his federal claim in this forum, 28 U.S.C. § 1367(d) provides that the period of limitations for Plaintiff's state law claims shall be tolled for a period of thirty (30) days from the date of this Court's Order dismissing them without prejudice.

## IV.     Conclusion

For the reasons discussed above, the Court will grant the District's Motion to Dismiss as to Count I of the Complaint, and will dismiss the District's Motion without prejudice as to the remaining claims set forth against it.  Any argument raised therein may be re-raised in the event that Plaintiff files an amended complaint consistent with this Court's Order.  The Court will further dismiss Lydic's Motion to Dismiss and Galando's Motion to Dismiss without prejudice to the filing of a materially similar motions in the event that Plaintiff files an amended complaint setting forth similar claims to those at issue in the current complaint.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: August 29, 2022

cc: All counsel of record