**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| J.R., a minor, by and through his parents and natural guardians, Mr. R.R. and Ms. N.R., | ) | No. 2:21-cv-01088-RJC |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Robert J. Colville |
| vs. | ) | |
| | ) | |
| GREATER LATROBE SCHOOL DISTRICT, a Pennsylvania Municipal Corporation, CARY JAMES LYDIC, an adult individual, DAVID F. GALANDO, an adult individual, R.S., a minor individual, and W.S., a minor individual, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are the following Motions: (1) the Motion to Dismiss (ECF No. 86) filed by Defendant Greater Latrobe School District (the "District"); (2) the Motion to Dismiss (ECF No. 88) filed by Defendant Cary James Lydic ("Lydic"); and (3) the Motion to Dismiss (ECF No. 90) filed by Defendant David F. Galando ("Galando").   In this action, Plaintiff J.R. ("J.R." or "Plaintiff"), a minor, by and through his parents and natural guardians, Mr. R.R. and Ms. N.R., asserts claims against the District, Lydic, Galando, R.S., and W.S. arising out of alleged hazing incidents and an alleged sexual assault perpetrated on Plaintiff by R.S. and W.S., Plaintiff's teammates on the District's junior varsity wrestling team, while Plaintiff was a student athlete on the wrestling team.   During the timeframe relevant herein, Lydic and Galando were coaches for the District's junior varsity wrestling team.   The District seeks dismissal with prejudice pursuant

to Rule 12(b)(6) of each of the claims (Counts I; IV; and VII) set forth against it in Plaintiff's Third

Amended Complaint (ECF No. 81) (the "Complaint").   District's Mot. ¶¶ 1-2, ECF No. 86.

Alternatively, the District asserts that Plaintiff fails to state a claim for which relief can be granted

with respect to any claims for attorney fees as part of Counts IV and VII. *Id.* at ¶ 4.  Lydic also

seeks dismissal with prejudice of the claims set forth against him (Counts II; V; and VII) by way

of his Motion to Dismiss; as does Galando by way of his Motion (Counts III; VI; and IX).

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §

1367.  The Motions have been fully briefed and are ripe for disposition.

## I.   Factual Background & Procedural History

In the Complaint, Plaintiff sets forth the following factual allegations relevant to the

Court's consideration of the Motions at issue:[1]

Plaintiff is, and was during the times relevant herein, a student at Greater Latrobe High

School.  Compl. ¶ 15, ECF No. 81.  During his freshman year, Plaintiff was accepted into the

District's Junior Varsity Wrestling program, where he was coached primarily by Lydic and

Galando.  *Id.*  Soon after the 2019-2020 wrestling season began, Plaintiff witnessed various acts

of hazing committed by several other members of the wrestling team, and specifically witnessed

the older wrestlers, particularly Defendants R.S. and Defendant W.S., hitting or smacking younger

teammates with a wooden stick that was kept in or near the practice gym.  *Id.* at ¶ 16.  The stick

was school property.  *Id.* at ¶ 19.  Plaintiff was personally attacked for the first time in December

of 2019, when R.S., Plaintiff's ninth-grade teammate, struck Plaintiff with the wooden stick on the

back of Plaintiff's leg.  *Id.* at ¶ 17.  R.S. communicated to Plaintiff that Plaintiff should accept and

---

[1] The Court notes that many of the allegations raised in the Third Amended Complaint were previously raised in Plaintiff's Second Amended Complaint.  The Court thus borrows heavily from its previous description of the factual background of this matter set forth in its Memorandum Opinion at ECF No. 79, and supplements that description where appropriate.

expect such abuse as a part of being a member of the wrestling team, and that Plaintiff would be expected to inflict similar abuse on other, typically younger, members of the wrestling team, specifically stating that "You get the stick, or you use the stick." *Id.* at ¶ 18.  Lydic and Galando were aware of and encouraged the behavior of team members such as R.S. and W.S. as a means of maintaining "tradition" and indoctrinating new members of the team. *Id.* at ¶ 19.  The coaches were aware that the wooden stick was being utilized as a weapon by students but permitted students to retain possession of the stick. *Id.*

At approximately 2:50 p.m. on January 8, 2020, Plaintiff arrived at the gymnasium for wrestling practice.  Compl. ¶ 20, ECF No. 81.  As he was preparing to put on his shoes, Plaintiff was tackled by W.H., a ninth-grade minor teammate, and was subsequently pinned to the ground facedown by W.H., R.S., W.S., and a fourth teammate. *Id.* at ¶ 21.  While immobilized, another teammate, S.B., retrieved a rope and/or a net, which he used to bind Plaintiff's feet and hands. *Id.* at ¶ 22.  The rope or net was also school property. *Id.*  W.H. and a number of other teammates continued to restrain Plaintiff on the ground after his feet and hands were bound. *Id.*  During the duration of this lengthy assault, several other teammates also entered the gymnasium to witness or assist in the hazing incident. *Id.*

While Plaintiff was being assaulted and hazed, Galando looked into the auxiliary gym from the doorway and observed the assault and hazing as it took place but proceeded to exit the doorway without taking any action.  Compl. ¶ 23, ECF No. 81.  Thereafter, a non-party teammate retrieved some water and proceeded to pour water over Plaintiff's face in a crude method of waterboarding, and Plaintiff was kicked several times by W.S and/or others. *Id.* at ¶ 24; ECF No. 94 at ¶ 5.  W.S. subsequently retrieved the wooden stick that had previously been used by R.S. to assault Plaintiff, and W.S. and/or other teammates began striking and/or jabbing Plaintiff with the stick as he

remained restrained on the ground.  Compl. ¶ 25, ECF No. 81.  W.S. and/or other teammates then took the stick and rammed or poked it through Plaintiff's pants and into the buttocks of Plaintiff approximately five times, all while Plaintiff was being restrained by R.S. and other teammates.  *Id*. In doing so, W.S. and/or other teammates purposefully used the stick to penetrate the anus of Plaintiff by forcing Plaintiff's shorts into his anus with the stick.  *Id*.  W.H., W.S., and R.S. laughed and made jokes during the entirety of this incident, and R.S. later admitted in his juvenile delinquency proceeding that he took advantage of his physical ability and knew he "had control over" his victims, and in particular, Plaintiff.  *Id.* at ¶ 26.

R.S. left the gymnasium towards the end of the assault to retrieve his phone and began to take a video and/or photographs of the incident.  Compl. ¶ 27, ECF No. 81.  Plaintiff was eventually able to free his hands from the rope and push his assailants off of him, at which time the assailants again attempted to tie him up with the rope a second time.  *Id.* at ¶ 28.  Despite his feet still being bound, Plaintiff stood up and was promptly knocked back to the ground, where the assault continued.  *Id*.  Thereafter, Plaintiff finally managed to fight off his assailants and gain control of the weapon used in the assault.  *Id*.  At that point, Galando appeared for a second time, noticed the rope and/or netting, and questioned the students regarding the incident.  *Id.* at ¶ 29.  The assailants denied any wrongdoing, and Plaintiff was unable to verbalize the incident at that time.  *Id*.

On January 8, 2020, and on every practice-day preceding the incident, the ninth-grade wrestlers, consisting of approximately fifteen (15) minor participants, were left completely unsupervised from 2:45p.m. until 3:30p.m., for a period of unsupervised time of forty-five (45) minutes every day.  Compl. ¶ 30, ECF No. 81.  The District, Lydic, and Galando left the minors unsupervised because wrestling practice was scheduled to begin at 3:30 p.m. due to the fact that the seventh- and eighth-grade wrestling team members did not finish classes until 3:15 p.m.  *Id.* at

¶ 31.   Despite the fact that the District knew that they would be unsupervised, the ninth-grade members of the junior varsity wrestling team, including Plaintiff, were required by the District to be in the practice gym prior to the start of practice to prepare for practice.  *Id*. at ¶¶ 30; 32.   The District set the wrestling coaches' schedules, declined to require the coaches to be present for the forty-five minute timeframe after ninth-grade junior varsity wrestling team members completed classes, and affirmatively decided not to pay the coaches for such extra time.  *Id.* at ¶ 32.

Plaintiff further avers that, despite the District's awareness of hazing on the wrestling team, "Defendant District was also negligent in failing to have anti-hazing polic[ies] and procedures in place, or to the extent it did, such policies were not adequately publicized or enforced[,]" and that "[a]ny training or instruction the District may have provided were manifestly inadequate as evidenced by the continued custom of hazing on the wrestling team."  Compl. ¶ 33, ECF No. 81.  Plaintiff asserts that:

> Defendant District failed to enforce the policies and/or procedures and/or to properly train and instruct Defendants Lydic and Galando on identifying and eliminating sports-related hazing and/or Defendant District's policies were wholly insufficient and/or absent altogether, because the custom of hazing was so pervasive to the wrestling program that it existed for many years prior to the instant incident.
>
> Plaintiff believes and therefore avers that the custom of hazing wrestlers either onto the team and or during participation within the team was being perpetrated and existed through multiple coaches, teams, and years.  Defendant District - having installed video cameras in the subject gym - had actual or constructive notice of this custom and practice of hazing, but allowed it to continue, thereby resulting in the harm sustained by the instant Plaintiff.
>
> Defendant District, despite being aware of the aforementioned hazing, violated the enforcement policies and provisions as required by 18 Pa. C.S. § 2808.  Any policy that Defendant District may have put in place to follow the state requirements was completely ignored by the school board, superintendents, and coaches.   The wrestling team and its coaches, including Defendant Lydic and Galando, operated as if the policy did not exist.  They continued with the long-standing custom and tradition of initiating wrestlers onto the team by increasingly escalating acts of

> hazing to new members, which culminated in the violent and abhorrent act as above
> described.
>
> By enacting said policy, even if entirely unenforced, the District created a scenario
> in which the minor Plaintiff could expect to be protected from hazing, particularly
> by the actions of his coaches, such that he forewent seeking alternate means of
> protection and supervision.  The District's custom of failing to train its coaches and
> leaving minor students unsupervised amount to a deliberate indifference to the
> rights of the minor Plaintiff and was sufficient to place the District on notice that
> there was a need for more training on hazing prevention and reporting.

*Id.* at ¶ 34-37.  Plaintiff alleges that the District "did not enforce its own anti-hazing policy by

providing supervision and/or security guards to prevent the ongoing and well-known student

assaults." *Id.* at ¶ 32.   The District's current anti-hazing policy requires coaches to report any

hazing activity, and requires all coaches and teachers to be trained in how to combat, stop, and

report hazing activities and incidents. *Id.* at ¶¶ 64-65.  Plaintiff avers that he was placed in a

position where he was unable to leave the premises or procure alternate adult assistance (i.e., other

than from Galando, who failed to intervene), thereby imposing a limitation on his ability to act on

his own behalf. *Id.*

Lydic and Galando were aware of prior hazing that had taken place on the wrestling team,

and were also aware of the location of the wooden stick used in Plaintiff's assault.  Compl. ¶ 38,

ECF No. 81.  After witnessing a hazing incident that preceded Plaintiff's assault, Lydic advised

the offending student to be careful to avoid the cameras located near the practice gym. *Id.* at ¶ 39.

Plaintiff avers that Lydic and Galando:

> were not only negligent in the supervision of their athletes[,] but were grossly
> negligent in their failure to report these assaults, and thereby emboldened the
> athletes to continue by failing to penalize them for same.  [Lydic and Galando]
> created a climate of fear and intimidation, and a team culture of betrayal from
> coaches who should be their mentors and protectors, and older students who should
> be their leaders and role models.

*Id.* at ¶ 41.  Plaintiff avers that he has suffered and continues to suffer from substantial harm as a result of the incidents and conduct described herein.  *Id.* at ¶¶ 42-45.

The Court granted in part the District's previous motion to dismiss, which sought dismissal of the claims set forth against it by Plaintiff in his second amended complaint.  The Court declined to reach Lydic's and Galando's prior motions to dismiss, or to address Plaintiff's state law claims against the District, as the Court maintained only supplemental jurisdiction over those claims following dismissal of his single federal claim.  Plaintiff filed the Complaint on September 18, 2022, asserting the following claims: (1): Count I – Fourteenth Amendment State-Created Danger pursuant to 42 U.S.C. § 1983 against the District; (2) Count II – Fourteenth Amendment State-Created Danger pursuant to 42 U.S.C. § 1983 against Lydic; (3) Count III – Fourteenth Amendment State-Created Danger pursuant to 42 U.S.C. § 1983 against Galando; (4) Count IV – Negligence Per Se against the District; (5) Count V – Negligence Per Se against Lydic (6) Count VI – Negligence Per Se against Galando; (7) Count VII – Negligence against the District; (8) Count VIII – Negligence against Lydic; (9) Count IX – Negligence against Galando; (10) Count X – Assault and Battery against R.S.; (11) Count XI – Assault and Battery against W.S.; (12) Count XII – Intentional Infliction of Emotional Distress against R.S.; (13) Count XIII – Intentional Infliction of Emotional Distress against W.S.

The District filed its Motion to Dismiss, along with a Brief in Support (ECF No. 87), on October 3, 2022.  Plaintiff filed a Brief in Opposition (ECF No. 100) to the District's Motion on October 21, 2022, and the District filed a Reply (ECF No. 107) on October 31, 2022.  Lydic filed his Motion to Dismiss, along with a Brief in Support (ECF No. 88), on October 3, 2022.  Plaintiff filed a Brief in Opposition (ECF No. 101) to Lydic's Motion on October 24, 2022.  Galando filed

his Motion and a Brief in Support (ECF No. 90) on October 5, 2022, and Plaintiff filed a Brief in Opposition (ECF No. 105) on October 25, 2022.

## II.     Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

8

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

### III.    Discussion

### A.  The District's Motion to Dismiss

### 1.    Section 1983 Claim (Count I)

With respect to Count I, Plaintiff's Section 1983 "state-created danger" claim, the District relies on argument that Plaintiff fails to set forth any affirmative conduct on the part of the District in creating a danger to Plaintiff.  As it did previously, the District asserts that Plaintiff's allegations are limited to passive failures on the District's part to act in light of a known risk, and that the same is insufficient to maintain a claim predicated on a state-created danger.  District's Br. in Supp. 15, ECF No. 87.  The Court disagrees.  While perhaps somewhat summarily pled, Plaintiff alleges that, despite the fact that the District knew that they would be unsupervised, the ninth-grade members of the junior varsity wrestling team, including Plaintiff, were required by the District to be in the practice gym prior to the start of practice to prepare for practice.  Compl. ¶¶ 30; 32, ECF No. 81.  This allegation, coupled with allegations that the approximately fifteen (15) ninth-grade team members were left completely unsupervised for forty-five (45) minutes every day and that the District, Lydic, and Galando were aware of the hazing activity that had taken place in the unsupervised practice gym, when construed in a light most favorable to Plaintiff, is sufficient to state affirmative conduct on the part of the District.

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  While individuals have "a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment[,] . . . the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens."

*Phillips*, 515 F.3d at 235 (citations omitted); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[The Due Process Clause's] purpose was to protect the people from the State, not to ensure that the State protected them from each other.").  An exception to this general rule is the state-created danger theory, under which the Third Circuit has explained that "the Due Process Clause can impose an affirmative duty to protect if the state's own actions create the very danger that causes the plaintiff's injury."  *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013).[2]

To establish a meritorious state-created danger claim, a plaintiff must prove the following essential elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citations omitted) (footnotes omitted) (internal quotation marks omitted).

The Third Circuit has emphasized that, "under the fourth element of a state-created danger claim, '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.'"  *Bright*, 443 F.3d at 282 (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d

---

[2] Another exception to this general rule is the "special relationship" exception, which is not applicable in this context. *See Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 731 (D.N.J. 2015) ("In general, the Court of Appeals has held that the authority that schools have over students during the school day does not create the 'special relationship' necessary for a student to assert a viable due process claim under § 1983." (citing *Morrow*, 719 F.3d at 170)).

Cir.1992)); *see also Middle Bucks*, 972 F.2d at 1373 ("Post-*DeShaney* courts have tracked the quoted Supreme Court's language by asking whether the state actors involved affirmatively acted to *create* plaintiff's danger, or to render him or her more *vulnerable* to it."); *L.R. v. Sch. Dist. of Philadelphia*, 60 F. Supp. 3d 584, 594 (E.D. Pa. 2014), *aff'd*, 836 F.3d 235 (3d Cir. 2016) ("It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." (quoting *Bright*, 443 F.3d at 282)).  While "the line between action and inaction may not always be clear[,]" the Third Circuit has explained that it has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised in some fashion." *Phillips*, 515 F.3d at 235–36; *see also Morrow*, 719 F.3d 177-78 (explaining that, while "the line between action and inaction is not always easily drawn[,]" a plaintiff must do more than simply attempt to "redefine clearly passive inaction as affirmative acts[.]"); *Middle Bucks*, 972 F.2d at 1374 ("We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." (quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)).

As noted, the District relies only on argument that Plaintiff fails to satisfy the fourth element of a state-created danger claim, arguing that Plaintiff fails to allege that a state actor *affirmatively* used his or her authority in a way that created a danger to Plaintiff or that rendered Plaintiff more vulnerable to danger than had the state not acted at all.  As it did previously, the Court again agrees that Plaintiff's allegations as to the scheduling of wrestling practice forty-five minutes after ninth-grade classes were scheduled to end and a failure to supervise ninth-grade wrestlers during that timeframe, without more, tend to fall directly in line with the type of conduct

that courts find to constitute passive inaction representing a failure to prevent a potentially predictable harm as opposed to affirmative acts that created or enhanced a danger posed to a plaintiff.

Courts in the Third Circuit routinely find that, without more, such allegations of the provision of a high school setting where an assault occurs without specific warning and the failure to supervise more closely constitute failures to act as opposed to affirmative acts. *See Pagan v. City of Philadelphia*, No. CIV.A. 11-5178, 2012 WL 1965386, at *6 (E.D. Pa. May 31, 2012) ("These allegations, which fault Defendants for leaving Pagan and other students 'unsupervised and unprotected,' reveal it is not Defendants' affirmative conduct in holding a fire drill—as they were required to do under state law—but their failure to provide adequate security in the stairwell that is alleged to have increased the risk of harm to Pagan."); *see also id.* ("These cases thus refute the suggestion that simply placing a student in a school officials know to be dangerous constitutes the affirmative act necessary to support such claims."); *Middle Bucks*, 972 F.2d 1364, 1376 (3d Cir. 1992) ("We readily acknowledge the apparent indefensible passivity of at least some school defendants under the circumstances.  Accepting the allegations as true, viz., that one school defendant was advised of the misconduct and apparently did not investigate, they show nonfeasance but they do not rise to the level of a constitutional violation."); *Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 732 (D.N.J. 2015) ("But providing a high school setting in which an assault occurs without specific warning does not amount to the school Defendants creating the opportunity for criminal conduct victimizing Plaintiff that could not otherwise have occurred.").

In this Court's prior Memorandum Opinion in this matter, the Court explained:

While Plaintiff takes issue with the scheduling of wrestling practice at a time when all students on the team could participate, but forty-five minutes after ninth-grade

classes were scheduled to end, his Complaint as a whole as to scheduling makes
clear that he takes issue with the District's inaction as opposed to affirmative
conduct.  *See* Compl. ¶ 57, ECF [N]o. 50 ("Defendant District's actions were
predicated on a failure to act in light of a known risk . . . .").  As alleged, Plaintiff
takes more issue with the fact that the school permitted ninth-grade students to use,
and did not prevent them from using, the gymnasium without supervision before
practice.  Plaintiff does not allege that the District affirmatively required students
to arrive at the gym at a time forty-five minutes before practice began.  It is the
District's failure to supervise, rather than the affirmative act of scheduling practice
and classes, that is truly at issue with respect to Plaintiff's allegations surrounding
scheduling.  The same cannot support a Section 1983 claim under clear Third
Circuit precedent.  The Court finds that Plaintiff's allegations respecting the
scheduling of wrestling practice are insufficient to support a Section 1983 claim.

ECF No. 79 at 12.

As it clearly noted, the Court believed that an allegation that the District had *required*
students to arrive at an unsupervised gymnasium ahead of the beginning of practice, particularly
where it has been alleged that the District was aware of prior hazing activity in that gymnasium by
wrestling team members, would present a different scenario than what the Plaintiff had previously
pled.  In the Complaint, Plaintiff now alleges that the District affirmatively required the ninth-
grade wrestling team members to report to the gymnasium to prepare "for practice at the
aforementioned scheduled time and at time when Defendant District knew the room to be devoid
of supervision."  Compl. ¶ 52, ECF No. 81.  The District itself acknowledges that this allegation
is "highly relevant" and "critical."  Br. in Supp. 8; 17, ECF No. 87.  It is this allegation that the
Court believes is most crucial to Plaintiff's assertion of affirmative conduct on the District's part.

Most courts considering factual allegations similar to those set forth herein, and particularly
those involving a sexual assault committed by a student or students against another student on
school grounds, describe the determination as to whether a plaintiff has sufficiently alleged

affirmative acts on the part of a state actor as a "close call."[3]  This Court also believes that the factual allegations set forth by Plaintiff with respect to the District present a close call, but that Plaintiffs' allegations regarding the District's requirement that ninth-grade students report to the unsupervised gymnasium where prior hazing had taken place before the commencement of wrestling practice take this case over the threshold such that Plaintiff has stated a plausible Section 1983 claim against the District.

The allegation that wrestling team members were required by the District to arrive early to an unsupervised gym where the District was aware that severe hazing had previously taken place among those team members is sufficient to allege that the District acted affirmatively, and, in doing so, placed J.R. in harm's way.  *See Maxwell ex rel. Maxwell v. Sch. Dist. of City of Philadelphia*, 53 F. Supp. 2d 787, 793 (E.D. Pa. 1999) ("In this matter, by contrast, the state defendants locked the classroom door, isolating the victims with their attackers, and cutting the vulnerable students off from assistance.  In addition, defendant Chu's statement informed the class that she would not control them.  Essentially, the school district defendants, including defendant Chu, placed Angela directly in harm's way."); *see also L.R.*, 60 F. Supp. 3d at 595 ("In contrast, this case involves allegations of a teacher taking affirmative steps to turn over a child under his supervision to an adult stranger, isolating her from accessing assistance, and thereby rendering her more vulnerable to harm.  Thus, the Court concludes that plaintiff has plead the final component of the state-created danger claim.").

This case is distinguishable from *Brown v. Sch. Dist. of Philadelphia*, 456 F. App'x 88 (3d Cir. 2011), wherein the Third Circuit explained:

---

[3] *See Middle Bucks*, 972 F.2d at 1374 ("Although we find this to be an extremely close case, and certainly a tragedy, we are convinced that the school defendants did not create plaintiffs' peril, increase their risks of harm, or act to render them more vulnerable to the student defendants' assaults.").

> The School District did not, for example, keep anyone else from helping Brown, as the police officers did by detaining Kneipp and sending her husband home, and it did not send her straight to the clutches of her assailants, as the officers did when they sent Kneipp into the cold night air.  The School District did not "act" at all.  This lack of action perhaps contributed in some way to tragic consequences for Brown and her family, but the School District's lack of affirmative action is, nonetheless, fatal to Brown's § 1983 claim.

*Brown*, 456 F. App'x at 92.  It is also distinguishable from *Lockhart*, wherein the United States District Court for the District of New Jersey explained:

> Plaintiffs argue that Defendants should have known that Tasia was at high risk for being sexually victimized because she had been sexually assaulted two years prior.  They argue that Defendants created the circumstances that led to her sexual assault because they allowed her to enter a classroom unsupervised.  But providing a high school setting in which an assault occurs *without specific warning* does not amount to the school Defendants creating the opportunity for criminal conduct victimizing Plaintiff that could not otherwise have occurred.  More specifically, the Complaint and Amended Complaint do not allege that the assailant "Chris" was known to present a danger of assault to Tasia nor that the Defendants somehow fostered or promoted the assault to occur.
>
> In short, no reasonable inference may be drawn that Defendants were aware of a high likelihood that allowing Tasia momentarily to enter a classroom unsupervised to retrieve her belongings would have led to her being sexually assaulted.

*Lockhart*, 170 F. Supp. 3d at 732 (emphasis added).  The Court also finds this case to be distinguishable from *Morrow*, wherein two students were repeatedly assaulted by another student, and the school district suspended the student rather than expelling the student.  In that case, the Third Circuit explained:

> We are not persuaded by the Morrows' argument that the Defendants affirmatively created or enhanced a danger to Brittany and Emily by suspending Anderson and then allowing her to return to school when the suspension ended.  Although the suspension was an affirmative act by school officials, we fail to see how the suspension created a new danger for the Morrow children or 'rendered [them] more vulnerable to danger than had the state not acted at all.'"  *Bright,* 443 F.3d at 281.  To the contrary, the suspension likely made the Morrows safer, albeit temporarily.  In addition, the fact that Defendants failed to expel Anderson, or, as the Morrows would describe it, "permitted" Anderson to return to school after the suspension ended, does not suggest an affirmative act.

*Morrow*, 719 F.3d at 178.

In the present matter, Plaintiff's claim does not merely rely on compulsory attendance at school or even at wrestling practice, but rather the requirement that he report to the dangerous, unsupervised gym forty-five minutes prior to the start of practice.  Plaintiff has alleged facts that permit an inference that the District was on notice of extreme hazing activity among the wrestling team, as well as encouragement of such activity from the team's coaches, but nonetheless affirmatively required the ninth-grade wrestlers to report to a gymnasium where they would be unsupervised for a period of forty-five minutes.  It is the affirmative act of compelling the ninth-grade student wrestlers to report to a known dangerous location that distinguishes the present case from those discussed above.  Plaintiff alleges that the District isolated Plaintiff with his attackers and cut Plaintiff off from assistance, thus placing him directly in harm's way.  *See Middle Bucks*, 972 F.2d at 1374 ("We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is.  If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." (citation omitted)).  The unsupervised gymnasium was the "snake pit," and Plaintiff alleges that the District affirmatively required him to be in that "snake pit" for forty-five minutes every day.  This alleged requirement, if it did not directly create Plaintiff's danger, at least rendered him more vulnerable to it than had the District not acted at all.  Plaintiff has alleged affirmative conduct on the part of the District.

To be sure, the District points to certain issues of fact that might ultimately have an impact on the viability of Plaintiff's claim.  The District insinuates that it had no authority to require students to report to a specific location outside of school hours and not during the course of

extracurricular activities, and takes issue with Plaintiff's failure to point to which individual or individuals communicated to the students that they were required to arrive at the gym early or provide further factual support for the assertion that the District installed security cameras in the gymnasium specifically to monitor the wrestling team.  Br. in Supp. 9, ECF No. 87.  At this juncture, the Court is merely required to find that Plaintiff has stated a claim that is plausible on its face and cannot resolve the factual issues raised by the District.  As explained above, Plaintiff has sufficiently pled affirmative conduct, and the issues of fact identified by the District can be more appropriately addressed at the summary judgment stage following discovery.  The Court will deny the District's Motion to Dismiss as to Count I.

### 2. Negligence Per Se (Count IV)

"The concept of negligence per se establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm."  *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014).  The Superior Court of Pennsylvania has explained that the following four requirements must be met for a plaintiff to prove a successful negligence per se claim:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
>
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
>
> (3) The defendant must violate the statute or regulation;
>
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Id.* (quoting *Mahan v. Am–Gard, Inc.*, 841 A.2d 1052, 1058–1059 (Pa. Super.2003)).

Plaintiff asserts he has sufficiently alleged that the District violated 18 Pa.C.S. § 2802, known as the Piazza Antihazing Law, in arguing that he has stated claims against the District for

negligence per se.  Compl. ¶¶ 97-98, ECF No. 81.  Pennsylvania law provides that an individual commits an act of hazing where the individual:

> [I]ntentionally, knowingly, or recklessly, for the purpose of initiating, admitting or affiliating a minor or student into or with an organization, or for the purpose of continuing or enhancing a minor or student's membership or status in an organization, causes, coerces or forces a minor or student to do any of the following . . . Endure brutality of a physical nature . . . Endure brutality of a mental nature . . . [or] [e]ndure brutality of a sexual nature . . . .

*Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393, 405 (M.D. Pa. 2020).  "The Piazza Antihazing Law also allows for findings that an organization or institution has violated the law if it 'intentionally, knowingly, or recklessly promotes or facilitates a violation of section 2802.'"  *Id.* (quoting 18 Pa. C.S. § 2804; 2805).

The District argues that Plaintiff fails to plead that the District had any knowledge of the hazing activity occurring on the wrestling team, and that the District thus could not have facilitated or promoted such activity.  This assertion is belied by the allegations in the Complaint, which the Court must consider as true at this stage of the proceedings.  Plaintiff alleges throughout the Complaint that the District knew or had constructive knowledge of the extreme hazing that had become a custom for the District's wrestling team.  The Court believes that this issue is much more appropriately addressed at the summary judgment stage following discovery, or at trial.  Plaintiff has pled that the District had institutional awareness of extreme hazing that had occurred on the wrestling team, and that it affirmatively required the ninth-grade wrestlers to report to a gymnasium where they would be unsupervised for a period of forty-five minutes ahead of practice.  With these allegations, the Court is satisfied that Plaintiff has sufficiently pled that the District "facilitated" hazing activity in violation of 18 Pa. C.S. § 2805's prohibition regarding institutional hazing.

### 3.  Negligence (Count VII)

To succeed on a claim of negligence, a plaintiff must establish: (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant breached that duty; (3) that the breach caused an injury to the plaintiff; and (4) the plaintiff suffered actual loss or damages. *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 221 (Pa. 2018). The District relies on an argument that it could not reasonably foresee the harm, a sexual assault, that was inflicted upon Plaintiff, that it owed Plaintiff no duty, and that Plaintiff cannot prove causation.

The District asserts that unless, an exception applies, it is immune from suit under the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), which provides: "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Pa.C.S. § 8541. Exceptions to this form of immunity are found at Pa.C.S. § 8542, which provides, in pertinent part:

> (a) Liability imposed. -- A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> > (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
> >
> > (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.
>
> (b) Acts which may impose liability. -- The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

20

(9) Sexual abuse. -- Conduct which constitutes an offense enumerated under section 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence.

42 Pa.C.S. § 8542.  Section 5551(7) provides as follows:

(7) An offense under any of the following provisions of 18 Pa.C.S. (relating to crimes and offenses), or a conspiracy or solicitation to commit an offense under any of the following provisions of 18 Pa.C.S. if the offense results from the conspiracy or solicitation, if the victim was under 18 years of age at the time of the offense:

Section 3011(b) (relating to trafficking in individuals).

Section 3012 (relating to involuntary servitude) as it relates to sexual servitude.

Section 3121 (relating to rape).

Section 3122.1 (relating to statutory sexual assault).

Section 3123 (relating to involuntary deviate sexual intercourse).

Section 3124.1 (relating to sexual assault).

Section 3124.2 (relating to institutional sexual assault).

Section 3125 (relating to aggravated indecent assault).

Section 4302 (relating to incest).

42 Pa.C.S § 5551.

The District correctly notes that, for the exception at Pa.C.S. § 8542(b)(9) to apply, Plaintiff "must demonstrate that the District's alleged acts or omissions were the proximate cause of J.R.'s sexual assault."  Br. in Supp. 21, ECF No. 87.  As noted, the District argues that it could not have reasonably foreseen the harm suffered by Plaintiff because it had no notice of the type of alleged hazing activities prior to or during J.R.'s alleged assault.  This assertion is belied by the allegations in the Complaint, which the Court must consider as true at this stage of the proceedings.  As noted

21

above, Plaintiff alleges throughout the Complaint that the District knew or had constructive knowledge of the extreme hazing that had become a custom for the District's wrestling team. Consistent with the Court's discussion with respect to Plaintiff's negligence per se claim, the Court believes that this issue is more appropriately addressed at the summary judgment stage following discovery, or at trial. The District's or any of its management-level employees' actual knowledge of the extent and nature of the hazing that preceded Plaintiff's assault, and whether the District could foresee the abuse suffered by Plaintiff, cannot and should not be resolved at this stage of the proceedings. This holding also resolves the District's arguments respecting whether a superseding cause precludes its liability, as the District again relies on argument that the superseding cause, the assault perpetrated by fellow students, was "so extraordinary or outrageous that it could not have been reasonably foreseeable." Br. in Supp. 26, ECF No. 87.

With respect to causation, a Plaintiff must prove "that the breach of duty was both the proximate cause and actual cause of injury was required." *Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super 2010). "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Id.* at 428. The District argues that any harm suffered by Plaintiff is directly attributable only to his fellow students, W.H. and Defendants W.S. and R.S. As discussed above, the Court has already held that Plaintiff has pled facts sufficient to assert that the District possibly created Plaintiff's danger and, at the least, rendered him more vulnerable to it than had the District not acted at all. In light of that holding and consistent with the Court's discussion above, Plaintiff has adequately pled proximate causation, and has thus sufficiently stated a claim for negligence against the District.

Turning to duty, the Court summarily rejects the District's assertion that it owed no duty of care to Plaintiff. A state actor can have "an affirmative duty to protect if the state's own actions

create the very danger that causes the plaintiff's injury." *Morrow*, 719 F.3d at 167.  Plaintiff has alleged that the District violated this duty, and the Court has held that he has pled facts sufficient to support a breach of that duty at this juncture.  On this record, the Court finds that the sexual assault exception to the PPSTCA applies, and that Plaintiff has stated a claim for negligence against the District.  The District's Motion to Dismiss will be denied as to Count VII.

### 4.   Request for Attorney Fees with Respect to State Law Claims

Finally, the District asserts that Plaintiff cannot claim attorney fees under Pennsylvania law with respect to his state law claims.  Plaintiff does not argue to the contrary, and the Court will grant the District's Motion to Dismiss as to this issue as uncontested.

### B.  Lydic's and Galando's Motions to Dismiss

The Court believes, given the general similarity of the allegations against, and the arguments raised by, Lydic and Galando, that the Motions to Dismiss presented by these two Defendants can be effectively addressed in tandem.

### 1.   Section 1983 Claim (Counts II and III)

While the Court described its decision regarding whether Plaintiff had alleged facts sufficient to establish affirmative conduct on the part of the District, the Court finds that there is no such close call with respect to Lydic and Galando.  As alleged, Lydic and Galando actively facilitated and encouraged the victimization of the Plaintiff in this case, and created a new danger for Plaintiff that rendered him more vulnerable to danger than had the coaches not acted at all. Lydic and Galando are not only alleged to have failed to notice hazing or to have created an environment where abuse could potentially take place, they are alleged to have enabled, encouraged, and assisted in such behavior.

In particular, Plaintiff's allegation that Lydic had previously personally observed a hazing incident and, instead of reporting the incident, provided the wrestling team member with advice to avoid school cameras, constitutes an affirmative act enabling and encouraging similar (and potentially worse) hazing to occur.  Plaintiff alleges that Lydic also observed and encouraged other hazing incidents, and told other team members to avoid cameras and to be particularly careful when utilizing the wooden stick.  Compl. ¶¶ 74-75, ECF No. 8.  It is a more than reasonable inference that such an allegation not only conveys to a potential assailant that what they are doing is acceptable, it provides them with advice on how to continue such behavior with less risk of someone (other than Lydic) discovering and reporting the abuse.  It is also reasonable to infer that such a communication might embolden the offending students to continue or increase their level of abuse, and, additionally, that a teacher and coach responsible for supervising students would be aware of the same.  By providing advice as to how to avoid detection of hazing activity to the students who eventually victimized Plaintiff, Lydic is alleged to have engaged in affirmative conduct that created an enhanced danger for Plaintiff that rendered him more vulnerable to danger than had Lydic not acted at all.  Plaintiff has further alleged that Lydic actively encouraged hazing by naming the perpetrators of the most egregious of the conduct as captains of the wrestling team.  Compl. ¶ 138(b), ECF No. 81.  In short, Plaintiff has pled that Lydic was aware of hazing on the wrestling team, and that Lydic actively encouraged and assisted in the same by providing advice to the perpetrators and naming the perpetrators team captains.

It also bears noting that Plaintiff has alleged that both Galando and Lydic were aware that hazing of this nature was taking place, and of the existence and location of the wooden stick used to commit Plaintiff's assault.  Plaintiff also alleges that Defendants were aware that the ninth-grade

wrestling team members were left unsupervised for a period of forty-five minutes before every practice.

Perhaps most troubling, Plaintiff has also alleged that, as Plaintiff was being hazed and assaulted, Defendant Galando looked into the auxiliary gym from the doorway, observed the hazing and assault as it took place, and proceeded to exit the doorway without taking any action. Compl. ¶ 23, ECF No. 81. Drawing all reasonable inferences in Plaintiff's favor, the timing of Galando's observation of the incident was, at least, after Plaintiff's feet and hands had been bound with a volleyball net, and while Plaintiff was being restrained, tied up, face down on the ground, by a number of assailants. Plaintiff was subsequently waterboarded and sexually assaulted by his assailants. It was only after Plaintiff freed himself that Galando questioned what had occurred.

As alleged, Galando certainly failed to act. But the Court believes that this failure to act rises to the level of an affirmative act where, as alleged here, Galando observed an assault taking place, with Plaintiff bound by rope and held in place face down by several wrestling team members, and simply walked away. It defies logic that such inaction, in the face of witnessing an actual assault in progress, could merely constitute a passive failure to protect. Drawing reasonable inferences in Plaintiff's favor, the assault continued after, and possibly escalated because of, Galando's actions, thereby putting Plaintiff directly in harm's way. As alleged, Gallando's silence in the face of an actual assault conveyed an affirmative message that he would not control the students conducting the assault, and, quite arguably, conveyed Galando's tacit or express approval of the conduct. Galando is alleged to have approached the gymnasium where the wrestling team members congregated prior to practice, observed an assault in progress, and to have walked away,

abandoning Plaintiff to his fate.[4]  Plaintiff's allegations regarding Galando's actions are similar to those presented in *Maxwell ex rel. Maxwell*, wherein a teacher informed a group of students that she was charged with supervising that she had no intention of controlling them, and then proceeded to sit idly while she passively witnessed a student be attacked and sexually assaulted.  *See* 53 F. Supp. 2d at 793.

Galando and Lydic are alleged to have used their authority as coaches to enhance the risk of escalated and more severe hazing incidents among the wrestling team, as opposed to simply failing to notice or protect Plaintiff from hazing.[5]  Plaintiff's allegations of Lydic's advice to team members to avoid cameras when hazing other team members and Galando's witnessing of the assault and his affirmative decision to not stop the assault, as well as Plaintiff's allegation that both Lydic and Galando were aware of the hazing that was occurring on their team and that they knew of the existence and location of the weapon used to perpetrate such hazing, are sufficient to allege affirmative conduct on the coaches' parts.  Accordingly, Plaintiff has pled affirmative conduct on the part of Lydic and Galando.

Galando also argues that the alleged assault at issue took place prior to the time that Plaintiff contends that he was under the care, custody, and control of Galando, and that Plaintiff thus has not alleged affirmative conduct on Galando's part while Galando was a state actor.  Why

---

[4] The Court summarily rejects Galando's argument that Plaintiff fails to allege facts to support a finding that the harm Plaintiff suffered was a "fairly direct" result of Galando's actions.  "'Fairly direct' refers to actions that cannot be 'separated from the ultimate harm by a lengthy period of time and intervening forces and actions.'"  *Keener v. Hribal*, 351 F. Supp. 3d 956 (W.D. Pa. 2018) (quoting *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013)).  Again, the timing of Galando's observation of the assault was, at least, after Plaintiff's feet and hands had been bound by a number of assailants with a volleyball net, and while Plaintiff was being restrained by those assailants, tied up, face down on the ground.  The allegations of escalating hazing are sufficiently tied to Plaintiff's allegations regarding Galando's actions.

[5] In this way, the Defendants are alleged to have not only failed to assist Plaintiff, but also to have sent him into the clutches of his assailants, who could reasonably be inferred to have been armed with the advice of and buoyed by the encouragement of the coaches.

Galando appeared at the gymnasium that day prior to the start of practice and for what purpose, and what level of authority he possessed at that moment, are issues of fact that cannot be resolved at this juncture.  This issue can be revisited at the summary judgment stage.

With respect to foreseeability, drawing reasonable inferences from Plaintiff's Complaint as to Defendants' knowledge and encouragement of prior hazing incidents, the Court finds, at this juncture, that Plaintiff has sufficiently pled that the alleged harm that was eventually inflicted upon Plaintiff was foreseeable.  The Court believes that Gallando's and Lydic's knowledge, if any, of the extent and nature of any prior hazing on the wrestling team is something that may be, and is more appropriately, pursued through discovery, and can eventually be addressed at the summary judgment stage.  It may be that the assault at issue was an isolated, aberrant, unpredictable act of hazing vastly different from those that preceded it.  On this record, where the Court is required to draw all reasonable inferences in Plaintiff's favor, the Court cannot conclude that Plaintiff fails to plead a foreseeable harm.  At this stage, the Court is satisfied that Plaintiff has sufficiently alleged that the coaches handed certain wrestling team members the opportunity, and, more importantly, the approval, encouragement, and advice, that enabled them to harm another student in a foreseeable manner.

Lydic and Gallando also assert that Plaintiff fails to allege that they acted in a way that was conscience shocking or deliberately indifferent to the risks faced by Plaintiff.  "The second prong of the test considers the mental state of the state actor as revealed through the person's actions." *Maxwell ex rel. Maxwell*, 53 F. Supp. 2d at 793.  "Though this prong involves an imprecise category of mens rea, the standard has been defined as acting with 'willful disregard for or deliberate indifference to the plaintiff's safety.'" *Id.* (quoting *Morse v. Lower Merion School District*, 132 F.3d 902 (3d Cir. 1997)).  "In situations in which the state actor is required to act in

a matter of hours or minutes, . . . the state actor [must] disregard a great risk of serious harm."

*Johnson v. City of Philadelphia*, 975 F.3d 394, 401 (3d Cir. 2020) (citation omitted) (internal

quotation marks omitted).  Plaintiff alleges that Lydic provided advice to wrestling team members

that Lydic had observed hazing other team members.  Plaintiff alleges that Galando observed

Plaintiff's assault but did not intervene.  Both are alleged to have been aware of hazing activities

on the team and the location of weapon used in Plaintiff's assault.  These allegations sufficiently

set forth a willful disregard or deliberate indifference to Plaintiff's safety, and Plaintiff has

certainly alleged facts sufficient to establish that Galando disregarded a great risk of serious harm

when he observed the assault in progress and chose to take no action.

For the reasons discussed above, the Court finds that Plaintiff has set forth sufficient

allegations to state Section 1983 claims against Lydic and Galando.  Because the Court has found

that Plaintiff has alleged sufficient facts to support the violation of a constitutional right under the

state-created danger theory with respect to Lydic, the Court rejects Lydic's argument that he is

entitled to qualified immunity.  Lydic's and Galando's Motions to Dismiss will be denied as to

Counts II and III.

### 2.  Negligence Per Se (Counts V and VI)

With respect to Plaintiff's negligence per se claims, the Court agrees that Plaintiff has not

stated a claim against Lydic or Galando.  "The concept of negligence per se establishes the

elements of duty and breach of duty where an individual violates an applicable statute, ordinance,

or regulation designed to prevent a public harm."  *Schemberg v. Smicherko*, 85 A.3d 1071, 1074

(Pa. Super. 2014).  The Superior Court of Pennsylvania has explained that the following four

requirements must be met for a plaintiff to prove successful on a negligence per se claim:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a
> group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Id.* (quoting *Mahan v. Am–Gard, Inc.*, 841 A.2d 1052, 1058–1059 (Pa. Super. 2003)).

Plaintiff asserts he has sufficiently alleged that Lydic and Galando violated 18 Pa.C.S. § 2802, known as the Piazza Antihazing Law, in arguing that he has stated claims against Lydic and Galando for negligence per se.  Br. in Opp'n to Lydic Mot. 8, ECF No. 101; Br. in Opp'n to Galando Mot. 7, ECF No. 105.  As noted above, Pennsylvania law provides that an individual commits an act of hazing where the individual:

> [I]ntentionally, knowingly, or recklessly, for the purpose of initiating, admitting or affiliating a minor or student into or with an organization, or for the purpose of continuing or enhancing a minor or student's membership or status in an organization, causes, coerces or forces a minor or student to do any of the following . . . Endure brutality of a physical nature . . . Endure brutality of a mental nature . . . [or] [e]ndure brutality of a sexual nature . . . .

*Humphries*, 492 F. Supp. 3d at 405.

Plaintiff's Brief in Opposition makes clear that, in asserting a violation of the Piazza Antihazing Law, he is relying on allegations that Lydic and Galando facilitated or promoted hazing, not that Lydic or Galando themselves hazed Plaintiff.  Br. in Opp'n to Lydic Mot. 9, ECF No. 101 ("For the reasons discussed above, it is clear that Lydic did, in fact, have actual and/or constructive notice of hazing and, moreover, *promoted* hazing and was undoubtedly in violation of the Piazza Antihazing Law.  *18 Pa.C.S. § 2804*." (emphasis added)); Br. in Opp'n to Galando Mot. 9, ECF No. 105 (Clearly and plainly for the reasons discussed above, it cannot be disputed that Galando did, in fact, have actual and/or constructive notice of hazing and, moreover, *promoted* hazing and was in violation of the Piazza Antihazing Law.  *18 Pa. C.S. § 2804*. (emphasis added)).

29

Plaintiff's assertion of the *promotion* of hazing and citation to 18 Pa.C.S. § 2804 make clear that he has not stated a claim for negligence per se against Lydic and Galando, who are individuals.

While Plaintiff's allegations are sufficient to state a claim against the District, as discussed above, Section 2804 or Section 2805 apply only to organizations and institutions, respectively, not to individuals.  In a case cited by Plaintiff, the United States District Court for the Middle District of Pennsylvania has explained:

> Plaintiff fares worse with his claim as to Franklin.  James Franklin is an individual, and therefore cannot be held liable under the "organizational" or "institutional" hazing provisions of the Piazza Antihazing Law.  He can only be found liable if he violated § 2802, as defined above.  Plaintiff makes no allegations that Franklin "cause[d], coerce[d] or force[d]" Plaintiff to do anything.  While Plaintiff attempts, in briefing, to argue that Franklin "created a situation" that facilitated the alleged hazing, the law only prohibits facilitation by organizations and institutions, not individuals.  Plaintiff cannot assert a negligence per se claim against Franklin under the Piazza Antihazing Law.

*Humphries*, 492 F. Supp. 3d at 405.  Because Plaintiff relies on assertions that Lydic and Galando promoted and facilitated hazing, he fails to state a negligence per se claim against Lydic or Galando.  Counts V and VI will be dismissed with prejudice, as the Court finds that amendment would be futile.

### 3.  Negligence (Counts VIII and IX)

As with the District, Lydic and Galando are entitled to immunity on Plaintiff's negligence claims unless an exception to the PPSTCA applies.  While both Lydic and Galando assert that Plaintiff fails to identify what Section 5551(7) offense is at issue in this case, the Complaint describes the incident at issue as a sexual assault, Compl. ¶ 26, ECF No. 81, and further describes the incident in sufficient detail to put Defendants on notice of the nature of the sexual assault.  "[A] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent."  18 Pa.C.S. §

3124.1.  "Deviate sexual intercourse" is defined to include "penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures."  18 Pa.C.S. § 3101.  In the Complaint, Plaintiff describes the alleged sexual assault as follows:

> Defendant W.S. and/or other teammates then took the stick and rammed or poked it through the pants and into the buttocks of Plaintiff approximately five times, all while Plaintiff was being restrained by Defendant R.S. and other teammates.  In doing so, Defendant W.S. and/or other teammates purposefully used the stick to penetrate the anus of Plaintiff by forcing Plaintiff's shorts into his anus with the stick.

Compl. ¶ 25, ECF No. 81.  Because Plaintiff specifically refers to the incident at issue as a "sexual assault," and because he sufficiently sets forth facts which describe a sexual assault under Pennsylvania law, the Court rejects the argument that Plaintiff fails to identify what Section 5551(7) offense is at issue at this case.

Lydic and Galando also argue that they owed no duty to Plaintiff.  As explained above, a state actor can have "an affirmative duty to protect if the state's own actions create the very danger that causes the plaintiff's injury."  *Morrow*, 719 F.3d at 167.  Plaintiff has alleged that Lydic and Galando breached this duty, and the Court has held that he has pled sufficient facts to support a breach of that duty at this juncture.  On this record, the Court finds that the sexual assault exception to the PPSTCA applies, and that Plaintiff has stated a claim for negligence against Lydic and Galando.[6]  Their Motions to Dismiss will be denied as to Counts VIII and IX.

## IV.    Conclusion

---

[6] To the extent that Plaintiff relies on the "special relationship" exception in asserting a duty owed by Lydic or Galando, the Court again notes that the Third Circuit has held generally that the authority that schools or teachers have over students during the school day does not create the "special relationship" necessary for a student to assert a viable due process claim under § 1983.  Because Plaintiff's negligence claims are sufficient to survive at this juncture, the Court will not explore this argument in detail.  That said, the Court believes that the facts as pled align with those cases where no special relationship was found to exist.

The Court will grant in part and deny in part the District's Motion to Dismiss, consistent with the Court's analysis herein.  The Court will further grant in part and deny in part Lydic's Motion to Dismiss and grant in part and deny in part Galando's Motion to Dismiss.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 25, 2023

cc: All counsel of record